HUGHES, ADMINISTRATOR, *v.* FETTER ET AL.

No. 355.   Argued March 1–2, 1951.—Decided June 4, 1951.

*Samuel Goldenberg* argued the cause and filed a brief for appellant.

*Herbert L. Wible* argued the cause for appellees. With him on the brief was *Robert H. Hollander.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Basing his complaint on the Illinois wrongful death statute,[1] appellant administrator brought this action in the Wisconsin state court to recover damages for the death of Harold Hughes, who was fatally injured in an automobile accident in Illinois. The allegedly negligent driver and an insurance company were named as defendants. On their motion the trial court entered summary judgment "dismissing the complaint on the merits." It held that a Wisconsin statute, which creates a right of action only for deaths caused in that state, establishes a local public policy against Wisconsin's entertaining suits brought under the wrongful death acts of other states.[2] The Wisconsin Supreme Court affirmed, notwithstanding the contention that the local statute so construed violated the Full Faith and Credit Clause of Art. IV, § 1 of the Constitution.[3] The case is properly here on appeal under 28 U. S. C. § 1257.

---

[1] Smith-Hurd's Ill. Ann. Stat., 1936, c. 70, §§ 1, 2.

[2] Wis. Stat., 1949, § 331.03. This section contains language typically found in wrongful death acts but concludes as follows: "provided, that such action shall be brought for a death caused in this state."

[3] 257 Wis. 35, 42 N. W. 2d 452.

We are called upon to decide the narrow question whether Wisconsin, over the objection raised, can close the doors of its courts to the cause of action created by the Illinois wrongful death act.[4]   Prior decisions have established that the Illinois statute is a "public act" within the provision of Art. IV, § 1 that "Full Faith and Credit shall be given in each State to the public Acts . . . of every other State."[5]   It is also settled that Wisconsin cannot escape this constitutional obligation to enforce the rights and duties validly created under the laws of other states by the simple device of removing jurisdiction from courts otherwise competent.[6]   We have recognized, however, that full faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state; rather, it is for this Court to choose in each case between the competing public policies involved.[7]   The clash of interests in cases of this type has usually been described as a conflict be-

---

[4] The parties concede, as they must, that if the same cause of action had previously been reduced to judgment, the Full Faith and Credit Clause would compel the courts of Wisconsin to entertain an action to enforce it.   *Kenney* v. *Supreme Lodge,* 252 U. S. 411.

[5] *E. g., Broderick* v. *Rosner,* 294 U. S. 629, 644; *Bradford Elec. Co.* v. *Clapper,* 286 U. S. 145, 154–155; *John Hancock Ins. Co.* v. *Yates,* 299 U. S. 178, 183.

[6] *E. g., Broderick* v. *Rosner,* 294 U. S. 629, 642–643; *Converse* v. *Hamilton,* 224 U. S. 243, 260–261; cf. *Kenney* v. *Supreme Lodge,* 252 U. S. 411, 415; *Angel* v. *Bullington,* 330 U. S. 183, 188.   The reliance of the Supreme Court of Wisconsin on *Chambers* v. *Baltimore & O. R. Co.,* 207 U. S. 142, was misplaced.   That case does not hold that one state, consistently with Art. IV, § 1, can exclude from its courts causes of action created by another state for, as pointed out in *Broderick* v. *Rosner, supra* at 642, n. 3, in *Chambers* "no claim was made under the full faith and credit clause."

[7] *E. g., Pink* v. *A. A. A. Highway Express,* 314 U. S. 201, 210–211; *Pacific Ins. Co.* v. *Commission,* 306 U. S. 493, 502; *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532, 547.

tween the public policies of two or more states.[8] The more basic conflict involved in the present appeal, however, is as follows: On the one hand is the strong unifying principle embodied in the Full Faith and Credit Clause looking toward maximum enforcement in each state of the obligations or rights created or recognized by the statutes of sister states; [9] on the other hand is the policy of Wisconsin, as interpreted by its highest court, against permitting Wisconsin courts to entertain this wrongful death action.[10]

We hold that Wisconsin's policy must give way. That state has no real feeling of antagonism against wrongful death suits in general.[11] To the contrary, a forum is regularly provided for cases of this nature, the exclusionary rule extending only so far as to bar actions for death not caused locally.[12] The Wisconsin policy, moreover, cannot

---

[8] See, e. g., Alaska Packers Assn. v. Commission, 294 U. S. 532, 547–550.

[9] This clause "altered the status of the several states as independent foreign sovereignties, each free to ignore rights and obligations created under the laws or established by the judicial proceedings of the others, by making each an integral part of a single nation . . . ." Magnolia Petroleum Co. v. Hunt, 320 U. S. 430, 439. See also Milwaukee County v. White Co., 296 U. S. 268, 276–277; Order of Travelers v. Wolfe, 331 U. S. 586.

[10] The present case is not one where Wisconsin, having entertained appellant's lawsuit, chose to apply its own instead of Illinois' statute to measure the substantive rights involved. This distinguishes the present case from those where we have said that "Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted." Alaska Packers Assn. v. Commission, 294 U. S. 532, 547; see also, Williams v. North Carolina, 317 U. S. 287, 295–296.

[11] It may well be that the wrongful death acts of Wisconsin and Illinois contain different provisions in regard to such matters as maximum recovery and disposition of the proceeds of suit. Such differences, however, are generally considered unimportant. See cases collected 77 A. L. R. 1311, 1317–1324.

[12] See note 2, supra.

be considered as an application of the *forum non conveniens* doctrine, whatever effect that doctrine might be given if its use resulted in denying enforcement to public acts of other states. Even if we assume that Wisconsin could refuse, by reason of particular circumstances, to hear foreign controversies to which nonresidents were parties,[13] the present case is not one lacking a close relationship with the state. For not only were appellant, the decedent and the individual defendant all residents of Wisconsin, but also appellant was appointed administrator and the corporate defendant was created under Wisconsin laws. We also think it relevant, although not crucial here, that Wisconsin may well be the only jurisdiction in which service could be had as an original matter on the insurance company defendant.[14] And while in the present case jurisdiction over the individual defendant apparently could be had in Illinois by substituted service,[15] in other cases Wisconsin's exclusionary statute might amount to a deprivation of all opportunity to enforce valid death claims created by another state.

Under these circumstances, we conclude that Wisconsin's statutory policy which excludes this Illinois cause of action is forbidden by the national policy of the Full Faith and Credit Clause.[16] The judgment is

[13] See *Broderick* v. *Rosner*, 294 U. S. 629, 643; compare *Anglo-American Provision Co.* v. *Davis Co.*, 191 U. S. 373, with *Kenney* v. *Supreme Lodge*, 252 U. S. 411.

[14] Cf. *Tennessee Coal Co.* v. *George*, 233 U. S. 354, 359–360.

[15] Smith-Hurd's Ill. Ann. Stat., 1950, c. 95½, § 23.

[16] In certain previous cases, *e. g.*, *Pacific Ins. Co.* v. *Commission*, 306 U. S. 493, 502; *Alaska Packers Assn.* v. *Commission*, 294 U. S. 532, 547, this Court suggested that under the Full Faith and Credit Clause a forum state might make a distinction between statutes and judgments of sister states because of Congress' failure to prescribe the extra-state effect to be accorded public acts. Subsequent to these decisions the Judicial Code was revised so as to provide: *"Such Acts*

reversed and the cause is remanded to the Supreme Court of Wisconsin for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE REED, MR. JUSTICE JACKSON, and MR. JUSTICE MINTON join, dissenting.

This is an action brought in the Wisconsin State courts to recover for the wrongful death of Harold G. Hughes. Hughes was killed in an automobile accident in Illinois. An Illinois statute provides that an action may be brought to recover damages for a wrongful death occurring in that State. Smith-Hurd's Ill. Ann. Stat., 1936, c. 70, §§ 1, 2. A Wisconsin statute provides that an action may not be brought in the courts of that State for a wrongful death occurring outside Wisconsin. Wis. Stat., 1949, § 331.03. The Wisconsin courts, obeying the command of the Wisconsin statute, dismissed the action. I cannot agree that the Wisconsin statute, so applied, is contrary to Art. IV, § 1 of the United States Constitution: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

The Full Faith and Credit Clause was derived from a similar provision in the Articles of Confederation. Art. 4, § 3. The only clue to its meaning in the available records of the Constitutional Convention is a notation

---

[of the legislature of any state] . . . and judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have . . . in the courts of such State . . . from which they are taken." (Italics added.) 28 U. S. C. (1946 ed., Supp. III) § 1738. In deciding the present appeal, however, we have found it unnecessary to rely on any changes accomplished by the Judicial Code revision.

in Madison's Debates that "Mr. Wilson & Docr. Johnson [who became members of the committee to which the provision was referred] supposed the meaning to be that Judgments in one State should be the ground of actions in other States, & that acts of the Legislatures should be included, for the sake of Acts of insolvency &c—." II Farrand, The Records of the Federal Convention, 447. This Court has, with good reason, gone far in requiring that the courts of a State respect judgments entered by courts of other States. *Fauntleroy* v. *Lum*, 210 U. S. 230; *Kenney* v. *Supreme Lodge*, 252 U. S. 411; *Milwaukee County* v. *M. E. White Co.*, 296 U. S. 268; cf. *Magnolia Petroleum Co.* v. *Hunt*, 320 U. S. 430. But the extent to which a State must recognize and enforce the rights of action created by other States is not so clear.

1. In the field of commercial law—where certainty is of high importance—we have often imposed a rather rigid rule that a State must defer to the law of the State of incorporation, or to the law of the place of contract. Thus, in *Broderick* v. *Rosner*, 294 U. S. 629, we held that New Jersey could not close its courts to suits which involved stockholder liability arising under the laws of New York. We had already said, in *Converse* v. *Hamilton*, 224 U. S. 243, 260, that such liability was "peculiarly within the regulatory power" of the State of incorporation; "so much so that no other State properly can be said to have any public policy thereon." In *John Hancock Insurance Co.* v. *Yates*, 299 U. S. 178, we held that the Georgia courts had to give full faith and credit to a New York parole evidence statute which prevented recovery on an insurance contract made in New York. In both these cases, the Court, speaking through Mr. Justice Brandeis, emphasized that it was the particular relationship involved which made the Full Faith and Credit Clause applicable.

In *Pink* v. *A. A. A. Highway Express,* 314 U. S. 201,
the Court found that the Full Faith and Credit Clause
did not require the courts of the forum to enforce, against
local policyholders, assessments valid under the laws of the
state of incorporation of a mutual insurance company.
In *Griffin* v. *McCoach,* 313 U. S. 498, we decided that the
forum may decline to enforce an insurance policy in
favor of beneficiaries who have no insurable interest under
local law. *Order of Travelers* v. *Wolfe,* 331 U. S. 586,
seems to have made it clear, however, that these decisions
did not represent a radical departure from the earlier
cases. We held in the *Wolfe* case that the forum was
required to give full faith and credit to a law of the state
of incorporation allowing a fraternal benefit society to
limit the duration of its liability. It is not merely a bit
of rhetoric to caution against imposing on the courts of
the forum a "state of vassalage." *Hawkins* v. *Barney's
Lessee,* 5 Pet. 457, 467, quoted in *Order of Travelers* v.
*Wolfe, supra,* at 627 (dissenting opinion). But this con-
sideration of autonomy is not sufficient to overcome the
advantages to be obtained from a degree of certainty in
corporate and commercial law.

2. In cases involving workmen's compensation, there is
also a pre-existing relationship between the employer and
employee that makes certainty of result desirable. The
possible interest of the forum in protecting the workman,
however, has made this Court reluctant to impose rigid
rules. In *Bradford Electric Co.* v. *Clapper,* 286 U. S. 145,
suit was brought in New Hampshire to recover for the
wrongful death of an employee occurring in New Hamp-
shire. We held, in an opinion by Mr. Justice Brandeis,
that the court sitting in New Hampshire would have to
dismiss the action because workmen's compensation was
an exclusive remedy under the laws of Vermont, where
the contract of employment was made, where the employ-
ment was usually carried on, and where both the employer

and the employee were domiciled. Mr. Justice Stone concurred on the ground that the New Hampshire courts would apply the Vermont law on principles of comity. He thought the Full Faith and Credit Clause "should be interpreted as leaving the courts of New Hampshire free, in the circumstances now presented, either to apply or refuse to apply the law of Vermont, in accordance with their own interpretation of New Hampshire policy and law." 286 U. S. at 164–165.

In *Alaska Packers Assn.* v. *Commission,* 294 U. S. 532, we held that California—where the contract of employment was entered into—was free to apply the terms of its own workmen's compensation statute to an employee injured in Alaska, although an Alaska statute purported to give an exclusive remedy to persons injured there. In *Pacific Insurance Co.* v. *Commission,* 306 U. S. 493, we held that the California courts need not give full faith and credit to the exclusive remedy provisions of the Massachusetts Workmen's compensation statute, although Massachusetts was the place of contract and the usual place of employment.

Mr. Justice Stone, who wrote the opinions in the latter two cases, specifically limited the *Clapper* decision: "The *Clapper* case cannot be said to have decided more than that a state statute applicable to employer and employee within the state, which by its terms provides compensation for the employee if he is injured in the course of his employment while temporarily in another state, will be given full faith and credit in the latter when not obnoxious to its policy." 306 U. S. at 504.

3. In the tort action before us, there is little reason to impose a "state of vassalage" on the forum. The liability here imposed does not rest on a pre-existing relationship between the plaintiff and defendant. There is consequently no need for fixed rules which would enable parties,

at the time they enter into a transaction, to predict its consequences.

The Court, in the *Clapper* case, stressed that New Hampshire had opened its courts to the action, but had refused to recognize a substantive defense. Indeed, the Court indicated that a State may be free to close its courts to suits based on the tort liability created by the statutes of other States: "It is true that the full faith and credit clause does not require the enforcement of every right conferred by a statute of another State. There is room for some play of conflicting policies. Thus, a plaintiff suing in New Hampshire on a statutory cause of action arising in Vermont might be denied relief because the forum fails to provide a court with jurisdiction of the controversy; see *Chambers* v. *Baltimore & Ohio R. Co.,* 207 U. S. 142, 148, 149; compare *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377 . . . . A State may, on occasion, decline to enforce a foreign cause of action. In so doing, it merely denies a remedy, leaving unimpaired the plaintiff's substantive right, so that he is free to enforce it elsewhere." 286 U. S. at 160.

This Court should certainly not require that the forum deny its own law and follow the tort law of another State where there is a reasonable basis for the forum to close its courts to the foreign cause of action. The decision of Wisconsin to open its courts to actions for wrongful deaths within the State but close them to actions for deaths outside the State may not satisfy everyone's notion of wise policy. See *Loucks* v. *Standard Oil Co.,* 224 N. Y. 99, 120 N. E. 198 (1918). But it is neither novel nor without reason. Compare the similar Illinois statute which was before this Court in *Kenney* v. *Supreme Lodge, supra.* Wisconsin may be willing to grant a right of action where witnesses will be available in Wisconsin and the courts are acquainted with a detailed local statute and cases construing it. It may not wish to subject residents to

suit where out-of-state witnesses will be difficult to bring before the court, and where the court will be faced with the alternative of applying a complex foreign statute—perhaps inconsistent with that of Wisconsin on important issues—or fitting the statute to the Wisconsin pattern. The legislature may well feel that it is better to allow the courts of the State where the accident occurred to construe and apply its own statute, and that the exceptional case where the defendant cannot be served in the State where the accident occurred does not warrant a general statute allowing suit in the Wisconsin courts. The various wrongful death statutes are inconsistent on such issues as beneficiaries, the party who may bring suit, limitations on liability, comparative negligence, and the measure of damages. See Report of the Special Commission to Study the Method of Assessing Damages in Actions for Death (Mass. Sen. No. 430, Dec. 31, 1942) 21 *et seq.;* Note, 1950 Wis. L. Rev. 354, 360, 363. The measure of damages and the relation of wrongful death actions to actions for injury surviving death have raised extremely complicated problems, even for a court applying the familiar statute of its own State. See Note, 91 U. of Pa. L. Rev. 68 (1942); Oppenheim, The Survival of Tort Actions and the Action for Wrongful Death—A Survey and a Proposal, 16 Tulane L. Rev. 386 (1942). These diversities reasonably suggest application by local judges versed in them. Compare *Burford* v. *Sun Oil Co.,* 319 U. S. 315; *Alabama Public Service Comm'n* v. *Southern R. Co.,* 341 U. S. 341.

No claim is made that Wisconsin has discriminated against the citizens of other States and thus violated Art. IV, § 2 of the Constitution. Compare *Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377. Nor is a claim made that the lack of a forum in Wisconsin deprives the plaintiff of due process. Compare *Brinkerhoff-Faris Co.* v. *Hill,* 281 U. S. 673; *Missouri* v. *Lewis,* 101 U. S. 22, 30.

Nor is it argued that Wisconsin is flouting a federal statute. Compare *Atlantic Coast Line R. Co.* v. *Burnette,* 239 U. S. 199, 201. The only question before us is how far the Full Faith and Credit Clause undercuts the purpose of the Constitution, made explicit by the Tenth Amendment, to leave the conduct of domestic affairs to the States. Few interests are of more dominant local concern than matters governing the administration of law. This vital interest of the States should not be sacrificed in the interest of a merely literal reading of the Full Faith and Credit Clause.

There is no support, either in reason or in the cases, for holding that this Court is to make a *de novo* choice between the policies underlying the laws of Wisconsin and Illinois. I cannot believe that the Full Faith and Credit Clause provided a "writer's inkhorn" so that this Court might separate right from wrong. *"Prima facie* every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum." Mr. Justice Stone, in *Alaska Packers Assn.* v. *Commission, supra,* at 547–548. In the present case, the decedent, the plaintiff, and the individual defendant were residents of Wisconsin. The corporate defendant was created under Wisconsin law. The suit was brought in the Wisconsin courts. No reason is apparent—and none is vouchsafed in the opinion of the Court—why the interest of Illinois is so great that it can force the courts of Wisconsin to grant relief in defiance of their own law.

Finally, it may be noted that there is no conflict here in the policies underlying the statute of Wisconsin and that of Illinois. The Illinois wrongful death statute has a proviso that "no action shall be brought or prosecuted

in this State to recover damages for a death occurring outside of this State where a right of action for such death exists under the laws of the place where such death occurred and service of process in such suit may be had upon the defendant in such place." Smith-Hurd's Ill. Ann. Stat., 1936, c. 70, § 2. The opinion of the Court concedes that "jurisdiction over the individual defendant apparently could be had in Illinois by substituted service." Smith-Hurd's Ill. Ann. Stat., 1950, c. 95½, § 23. Thus, in the converse of the case at bar—if Hughes had been killed in Wisconsin and suit had been brought in Illinois—the Illinois courts would apparently have dismissed the suit. There is no need to be "more Roman than the Romans."*

---

*Compare Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1210, 1220 (1946).