SOLICITOR FOR THE AFFAIRS OF HIS MAJESTY'S TREASURY, Appellant, *v.* BANKERS TRUST COMPANY, Respondent.

SHIENTAG, J. (dissenting). A debtor is sued by the assignee of a foreign creditor. The debtor admits the debt but asserts that the assignor — the original foreign creditor — is an adverse claimant. Pursuant to section 51-a of the Civil Practice Act, the debtor procures an order staying the action for one year, deposits the amount of the debt into court, and gives the prescribed notice to the original creditor that she must intervene in the action or bring a separate action in New York within one year and ten days or be forever barred. The original creditor fails to make a claim within the statutory period and is now barred. May the debtor now deny the title of the plaintiff and prevent it from recovering the fund which it deposited in court?

The learned court below in a carefully reasoned opinion answered this question in the affirmative and that holding has been affirmed by a majority of this court. Mine is the only dissent, but the question presented is of such importance that I feel I should state fully my reasons for dissenting.

The complaint alleges that Mrs. Margaret Louisa Maitland-Tennent (hereinafter "Mrs. Tennent") at all pertinent times was a citizen and resident of the United Kingdom. In 1947, His Majesty's Government enacted the Exchange Control Act (10 & 11 Geo. 6, ch. 14), pursuant to which all persons in the United Kingdom were required to sell specified foreign currencies (including U. S. dollars) to authorized dealers, in exchange for pounds sterling. Mrs. Tennent failed and refused so to sell her foreign currency, to-wit, her demand deposit account with the defendant (hereinafter called "Bankers") of $117,000. Therefore, pursuant to authority granted in the Act, His Majesty's Treasury vested her account with Bankers. The account was assigned to the plaintiff. Plaintiff demanded payment of the account and, upon Bankers' refusal, started this action claiming ownership of the account by reason of the vesting and assignment.

Bankers made a motion pursuant to section 51-a of the Civil Practice Act to give notice of the action to Mrs. Tennent as an adverse claimant, and to stay the action for a year. Bankers admitted that the $117,000 was due and payable, that it had previously advised Mrs. Tennent of plaintiff's claim to the account, and that Mrs. Tennent had not made any claim that she was still the owner of the account. Nevertheless, relying upon the language in section 51-a that a bank depositor is conclusively deemed to be an adverse claimant when another sues for the account (subd. 5), Bankers asked that the action be stayed and notice be given to Mrs. Tennent.

Plaintiff resisted this motion on the grounds: (1) Mrs. Tennent was in fact not an adverse claimant; although aware for a long time of plaintiff's claim and action, she had at no time indicated that she still claimed any interest in the account. (2) Plaintiff's right to the account was so clear that any adverse claim by Mrs. Tennent would be frivolous. (3) The only basis for invoking section 51-a is to obtain protection from the hazard of double liability and plaintiff had offered Bankers more complete protection than it could obtain by court proceedings. The court nevertheless held that, regardless of the merits, Bankers had a statutory right to invoke section 51-a, and the motion was granted (197 Misc. 381).

The protection which plaintiff offered to Bankers, even before the action was started, was an indemnity bond pursuant to subdivision 5 of section 134 of the Banking Law, not only against the hazard of having later to pay the $117,000 to Mrs. Tennent, but also against costs and expenses in any proceeding brought by Mrs. Tennent. Bankers had rejected the proffered bond. When the section 51-a motion was made, plaintiff repeated this offer and it was again refused.

Plaintiff made a cross motion under paragraph 2 of subdivision 3 of section 51-a, that, if Bankers' motion was granted, it should be required to pay the $117,000 into court or post a bond. This cross motion was also granted, and Bankers elected to pay the money into court.

The statutory notice was sent by mail to Mrs. Tennent, advising that her right to intervene in this action or start another action in New York was limited to one year and ten days. The statutory period has expired without any action by Mrs. Tennent.

After the expiration of the statutory time within which Mrs. Tennent could make a claim to the fund in court or Bankers could seek its remission, it interposed an answer denying any knowledge or information as to the material allegations of the complaint, and affirmatively pleading that Mrs. Tennent was

still the owner of the account and that plaintiff was not. Thus, in paragraph 11 of its answer, Bankers alleges that the $117,000 is the property of Mrs. Tennent, and asks judgment dismissing the complaint.

As affirmative defenses, it is alleged that Mrs. Tennent was entitled to be paid in the United Kingdom such sum in sterling as she would have received if she had sold the dollars to an authorized dealer pursuant to the Exchange Control Act, and that nothing has yet been paid to Mrs. Tennent; that the aforesaid sum in sterling is less than the true value of the dollars and that, therefore, the vesting is confiscatory and contrary to the public policy of the United States and of the State of New York; that the vesting is a revenue, fiscal and penal action of a foreign sovereign and is, therefore, unenforcible in the courts of New York; and that the money has been paid into court pursuant to the order of this court, that Mrs. Tennent is an indispensable party to the action, and that she has not been joined as a defendant.

Although the answer does not specifically ask that the $117,000 paid into court be remitted to Bankers, it would appear that Bankers seeks to achieve that result. Its argument that a dismissal of the complaint will relieve it of the hazard of double liability, and that perhaps Mrs. Tennent could then sue Bankers for the money on the theory of a constructive trust, can be predicated only on the assumption that Bankers would get back the $117,000.

Plaintiff moved to strike the answer on the ground that Bankers had no further interest in the fund in court or in the lawsuit. As a debtor who admitted the debt, Bankers was interested only in an acquittance of the debt, and such acquittance had been obtained by the bar of section 51-a and the discharge provisions of section 133 of the Civil Practice Act, which provides: " § 133. *Party bringing money into court is discharged.* A party bringing money into court pursuant to the direction of the court is discharged thereby from all further liability to the extent of the money so paid in." The learned court below denied plaintiff's motion. With that conclusion I am in disagreement.

Ordinarily, when a defendant is sued for property which he admittedly holds either for plaintiff or another claimant, the defendant will resort to interpleader in order to protect himself. In such a case, upon the deposit of the property into court and the interpleading of the adverse claimant, the defendant ceases to have any interest in the action; he may not later seek the return of the property, nor will he be heard by the court to contest the title of one of the claimants or to assert the title of another.

A defendant who admits the debt, but asserts that there is an adverse claimant, may invoke interpleader. In such cases it has been held that after the interpleading defendant has deposited the money into court, he is discharged from liability and " pass[es] utterly out of the controversy, leaving that to proceed between the several claimants." (*Bassett* v. *Leslie,* 123 N. Y. 396, 399.)

Interpleader is generally considered a proceeding in rem, and the adverse claimant may be brought into the action by either personal or substituted service. Until *Hanna* v. *Stedman* (230 N. Y. 326 [1921]) it was assumed that this was true whether the property in question was tangible, intangible or a debt. However, in that case, the Court of Appeals held that interpleader on a debt is in personam and therefore the court had no jurisdiction over claimants not amenable to personal service of process. That decision made unavailable to defendant debtors faced with adverse claims by nonresidents the protection against the hazard of double liability generally afforded by interpleader (see, also, *New York Life Ins. Co.* v. *Dunlevy,* 241 U. S. 518).

In 1939, when the problems of domestic debtors became acute because of the impending war and forced assignments by European citizens, the Legislature enacted section 51-a of the Civil Practice Act in order to give New York debtors protection against nonresident adverse claimants equivalent to that obtainable by interpleader in the case of resident claimants. (L. 1939, ch. 805.) To avoid the rule of *Hanna* v. *Stedman* (*supra*), this section was made to operate somewhat differently from interpleader; the nonresident claimant is not made a party to the action but instead is given notice of the suit and the right to intervene; the action is stayed; he is advised that his right to intervene or to start a separate suit against the debtor is limited to a year and ten days and, if he fails to intervene or sue within that time, his cause of action is barred.

In interpleader, the defendant concedes the debt, pays the fund into court and brings the adverse claimant into the action, casting upon him the right and duty to assert his own claim. Under section 51-a, the defendant likewise concedes the debt, invites the adverse claimant to intervene or start a separate action in New York within a year and ten days, and advises him that his cause of action will otherwise be barred. As in interpleader, the defendant under section 51-a may pay the money into court and he thereupon "is discharged * * * from all further liability to the extent of the money so paid in" (Civ. Prac. Act, § 133).

I am of the opinion that, after invoking section 51-a and depositing the fund in court, defendant may not seek judgment in its own favor, or contest the title of one of the claimants or assert the title of another. The language of section 51-a compels the conclusion that the defendant invoking its protection and depositing the fund in court becomes a disinterested party to the action. The scheme of section 51-a is that the defendant may cast upon the adverse claimant the burden of asserting his own claim as against that of the plaintiff, protecting the defendant regardless of which of them prevails. The defendant then has no further interest in the controversy or in who gets the money. As a debtor, the defendant is interested only in an acquittance, and this having been achieved, he "drops out of" the action.

By invoking section 51-a, a debtor admits that his only defense is the possible title of the adverse claimant. Here, for instance, Bankers admits that it owed Mrs. Tennent the $117,000, and claimed only that plaintiff may not have acquired her interest in the money. Mrs. Tennent having defaulted, however, she can no longer assert an interest in the money. As Bankers has no possible defense other than the title of Mrs. Tennent, and that title cannot be asserted, there is no reason to permit Bankers to interpose an answer.

The legislative intent that the defendant should not be permitted to seek a judgment in its own favor after default by the adverse claimant is made clear by the provision that the undertaking of the defendant may be discharged, or the money paid into court remitted, only if the adverse claimant intervenes or starts another action in New York within the year and ten days. (Civ. Prac. Act, § 51-a, subd. 3, par. 3.)

Thus, Bankers cannot now obtain a judgment that the money in court be remitted to it. Certainly, it cannot obtain a judgment that the money be paid to Mrs. Tennent. Thus, the Legislature must have intended that, upon the default of the adverse claimant, the money be paid to the plaintiff.

Bankers' answer is not justified by the claimed hazard of double liability. The hazard of double liability is not real, Bankers now being protected by the bar provisions of section 51-a, the discharge obtained pursuant to section

133, and the order of Mr. Justice Benvenga dated February 27, 1950. (197 Misc. 381.)

The gist of Bankers' argument is that section 51-a is a mere Statute of Limitations, and therefore not entitled to the benefit of the full faith and credit clause of the Constitution. Concededly most of the States in the Union have enacted "borrowing" Statutes of Limitations which would permit section 51-a to be pleaded as a complete defense in its courts. There are, however, some few States which do not have a "borrowing" statute. It is further contended, if section 51-a is a Statute of Limitations, it might not be recognized in the courts of other nations. In other words, Bankers claims that section 51-a merely bars the remedy without extinguishing the right of the adverse claimant. Plaintiff claims that the right is barred, in which event it is clear that the bar will be universally recognized.

I believe that section 51-a differs from a "mere" Statute of Limitations in that it is applicable only with respect to adverse claimants who have made claim to the debt, requires notice to the adverse claimant, and affords more than a year's opportunity for the adverse claimant to assert his rights. Further, section 51-a, unlike any other section of article 2 of the Civil Practice Act, requires the defendant either to furnish an undertaking or to pay the amount of the debt into court, and the benefits of section 51-a can be obtained only by order of the court. Thus, we have not the barring of a remedy by mere lapse of time, but by an order of the court coupled with payment or security by the defendant.

Section 51-a of the Civil Practice Act, not being a mere Statute of Limitations which can be ignored at will by the courts of other States, is entitled to full faith and credit as a law operating upon the rights of the parties, particularly as the undertaking or payment by the debtor into court becomes irrevocable after the expiration of the statutory period. A law of one State must be accorded full faith and credit by all other States (cf. *Hughes* v. *Fetter,* 341 U. S. 609, 613).

As stated by Mr. Justice Holmes in *Davis* v. *Mills* (194 U. S. 451, 453–454): "The general theory on which an action is maintained upon a cause which accrued in another jurisdiction is that the liability is an *obligatio,* which, having been attached to the person by the law then having that person within its power, will be treated by other countries as accompanying the person when brought before their courts. But, as the source of the obligation is the foreign law, the defendant, generally speaking, is entitled to the benefit of whatever conditions and limitations the foreign law creates. *Slater* v. *Mexican National Railroad,* 194 U. S. 120. It is true that this general proposition is qualified by the fact that the ordinary limitations of actions are treated as laws of procedure and as belonging to the *lex fori,* as affecting the remedy only and not the right. But in cases where it has been possible to escape from that qualification by a reasonable distinction courts have been willing to treat limitations of time as standing like other limitations and cutting down the defendant's liability wherever he is sued."

Further, the barring of the right of the adverse claimant results from the order of the court and not from any automatic operation of a period of limitations. It is the court which orders the notice to the adverse claimant that his rights will be barred after the expiration of the year and ten days, and which affects the rights of the plaintiff and defendant, the former by the year's stay and the latter by requiring an undertaking or payment into court which may not be discharged or remitted in the event of the default of the adverse claim-

ant. This order of the court is entitled to the same full faith and credit under the Constitution as any other judicial action affecting substantive rights. The discharge provision of section 133 (which applies when the money is paid into court pursuant to section 51-a) is substantive and not remedial. A similar discharge provision was held by the United States Supreme Court in *Zimmerman* v. *Sutherland* (274 U. S. 253) to be entitled to universal recognition.

Even if, for the sake of argument, it were to be assumed that there are a few jurisdictions in which Mrs. Tennent might still sue Bankers to recover the $117,000, that would not constitute such a hazard of double liability as would be recognized by the New York courts. Section 51-a expressly provides that the undertaking may be discharged, or the money paid into court remitted, only if the adverse claimant intervenes or institutes another action in New York. The institution of an action by Mrs. Tennent in Brazil, for instance, even within the statutory period, would not entitle Bankers to a remission of the sum deposited in court. It follows that our courts would ignore a suit by the adverse claimant in another jurisdiction *after* the bar of section 51-a has become operative.

Any hazard which exists is due to Bankers' deliberate conduct. Both before and after this action was started, plaintiff offered Bankers a surety bond, pursuant to subdivision 5 of section 134 of the Banking Law, against later having to pay the $117,000 to Mrs. Tennent, as well as against any costs and expenses in connection therewith. Bankers chose to decline the surety bond and to invoke the protection of section 51-a instead. Bankers having voluntarily elected to invoke section 51-a, instead of defending on the merits or accepting a surety bond, should not be permitted to ignore that election and the delay, and to attempt now to defend on the merits, thereby furher delaying plaintiff's recovery. To sustain the position of Bankers would under the circumstances here presented, amount to a holding that section 51-a of the Civil Practice Act is meaningless and that voluntary resort to it by a debtor accomplished nothing unless the foreign claimant appears in the action. Accordingly I vote that the order appealed from should be reversed and the motion of the plaintiff granted.

Glennon, J, P., Dore and Cohn, JJ., concur in decision; Shientag, J., dissents and votes to reverse and grant the motion, in opinion.

Order affirmed, with $20 costs and disbursements to the respondent. No opinion. [200 Misc. 383.] [See *post*, p. 733.]