**Norman R. OLEWILER, Administrator of the Estate of Martha H. Grimes, deceased,**

v.

**FULLERTON SUPPLY COMPANY, Inc., a body corporate, and Thomas J. Heim.**

**Civ. A. No. 10431.**

United States District Court
D. Maryland,
Civil Division.
June 12, 1958.

Paul Berman, Baltimore, Md., for plaintiff.

Max Sokol, Baltimore, Md., Gordon G. Power, Towson, Md., for defendants.

CHESNUT, District Judge,

The complaint in this case is filed by a citizen of Pennsylvania acting as administrator of Martha H. Grimes, against two defendants who are citizens of Maryland. In short substance the complaint alleges that Martha H. Grimes, the decedent, was a passenger in an automobile driven by her husband, Ray Albert Grimes, which was involved in a collision with a tractor-trailer owned by the corporate defendant, and operated by the other defendant as its agent. The accident occurred on August 30, 1957 in the State of Pennsylvania and it is alleged was caused by the negligent operation of the defendant's vehicle and in consequence of the injuries received by the decedent, she died the next day. The cause of action is based on the Pennsylvania statute which authorizes a suit by an administrator of a decedent for the benefit of certain prescribed relatives including the husband and minor children of the decedent for whose benefit this suit has been instituted. The Pennsylvania statute is a form of action to re-

cover for wrongful death similar, in general substance, to what has frequently been referred to as Lord Campbell's Act. The present suit has been filed in this federal court to enforce the provisions of the Pennsylvania statute.

The defendants have filed a motion to dismiss the suit in which they challenge both the general jurisdiction of this federal court and the particular venue for the suit. As the complaint clearly alleges diversity of citizenship, it is clear enough on the face of the complaint that there is general federal jurisdiction; and as the individual defendant is a citizen of Maryland and the corporate defendant has been organized under the laws of the State of Maryland, it is equally clear that this particular federal court for Maryland has venue jurisdiction, 28 U.S. C.A. §§ 1332, 1391(a). However, it further appears from the defendants' motion to dismiss that it is particularly based upon the provisions of section 3(c) of Art. 67 of the Maryland Code of 1957 (the Maryland Lord Campbell's Act), which reads:

"3. (c). The provisions of *this section* shall not in any way be construed to apply to the actions in which service of process can be obtained in the jurisdiction where the cause of action arose or where the plaintiff resides." (Italics supplied.)

Counsel for the defendants also point out that the complaint fails to allege that effective service of the suit by the plaintiff could not be maintained in Pennsylvania against the defendants and therefore it is contended that the effect of section 3(c) is to preclude the maintenance of this suit either in a Maryland State court or in this federal court.

For the reasons now to be stated I have concluded that subsection (c) of section 3 does not constitute a legal obstacle to the maintenance of the suit in this federal court. To understand the precise point of the defendants' contention, it will be helpful to look at the history of Lord Campbell's Act in Maryland. The original statute upon the subject was passed in 1852 shortly after the passage in England by Parliament of Lord Campbell's Act, which, for the first time, abrogated the rule of the common law that a personal action died with the person (actio personalis moritur cum persona). The Maryland Act has always been referred to as Lord Campbell's Act. It is also a matter of general legal knowledge that very many, if not all, of the several States have passed similar Acts in substance although differing in particular details from the original Lord Campbell's Act. Pennsylvania has such a statute.

The first section of the original Maryland Act of 1852 [1] provided the substantive remedy for suits based upon wrongful death. The chief class of beneficiaries was surviving husband or wife, parent or children. Section 2 of the original Act (now codified as section 4 of Art. 67) provided that the form of titling of the suit was to be in the name of the "State of Maryland, for the use of" the named persons who were in the class of beneficiaries provided in the Act. While the Maryland Court of Appeals has frequently dealt with cases of wrongful death occurring in Maryland and governed by the Maryland Act, there was, prior to June 1, 1937, a series of Maryland cases which refused to permit suit in Maryland for wrongful death occurring outside of Maryland even though the particular State in which the accident occurred had adopted a form of Lord Campbell's Act. Some of the wrongful death statutes in other States provided that the suit must be brought by the administrator or executor of a decedent for the benefit of the described class of surviving relatives or dependents. The reasons given by the Maryland Court in several of these cases refusing to entertain the suits in this State were, in some cases, that a foreign administrator had no standing to sue outside the State of his appointment, and

1. Code 1957, art. 67, § 1.

could not properly maintain such a suit in Maryland because it might be in prejudice to the rights of Maryland creditors. In other cases the Maryland Court had refused to enforce the foreign statute because its provisions were regarded as too dissimilar to those of the Maryland Act and therefore should not be enforced as a matter of public policy in the State. However, contrary to these decisions the federal courts, including particularly the Supreme Court of the United States, had in several cases upheld the right to enforce the foreign statute in the federal courts where the jurisdiction was otherwise sufficient. Such a decision was rendered by this Maryland federal court in Rose v. Phillips Packing Co., D.C., 21 F.Supp. 485. The reasons for sustaining jurisdiction in this court were explained in that case which dealt with a wrongful death action occurring in Virginia and brought by a Virginia administrator. Possibly due to these several federal decisions the Maryland Legislature passed an amendment to the Maryland Lord Campbell's Act, now codified as section 2 of Art. 67 of the Code of 1957, which provided that the Maryland Courts should have authority to enforce other State laws in the general nature of Lord Campbell's Act; with the further proviso that the Maryland procedural requirements should be applied to effect the substantial provisions of the foreign statute. This statute was passed in 1937 but did not apply to fatal accidents occurring in other States prior to June 1st of that year.

In applying this 1937 statute, one of the procedural difficulties apparently encountered was the Maryland provision that Lord Campbell's Act in Maryland required the title of the suit to be in the name of the State of Maryland which apparently was thought to be inapplicable to a foreign statute. But whether due to this or other similar procedural uncertainties the Maryland Legislature passed a further Act in 1947, now codified as section 3 of Art. 67, which, in three subsections provided (a) that the suit could

be brought by a person duly qualified and authorized by statute of the foreign State; (b) that if the foreign statute authorized suit to be brought in the name of the foreign State, district or territory, as the case may be, then the suit could be brought in Maryland in the name of this State; and (c) as above set out was the literal provision that this section shall not in any way be construed to apply to actions in which service of process can be obtained in the jurisdiction where the cause of action arose or where the plaintiff resides.

The defendants' contention is that this subsection (c) of section 3 is jurisdictional in nature and restricts the authority of the Maryland court to entertain any suit based on a foreign wrongful death statute unless it is shown that such a suit could not be effectively brought and maintained in the foreign State, against the defendants in this case; and that as the Maryland courts are closed by subsection (c) the federal courts since the decision of the Supreme Court in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, are likewise closed to the enforcement of the foreign statute. With respect to the nature of the points that suit could be successfully maintained in Pennsylvania against these defendants, counsel apparently have reference to the provisions in a Pennsylvania statute, 75 P.S. § 1201 et seq. regarding automobile accidents in that State, that service can be properly made on some State official as against a non-resident negligent motorist, a provision similar to that in Maryland Code 1957, art. 66½, § 115, with respect to negligent nonresident motorists using the highways of this State.

The defendants' contention with respect to the asserted provision of subsection 3 is further based on their counsels' contention that in construing the effect of subsection 3 it must be regarded as applicable to and limiting the substantive provision in section 2; that is to say, that section 2 does not authorize the

Maryland court to enforce the foreign statute if the applicable laws of the foreign State provide a method of service on the negligent non-resident motorist. More particularly, the contention is that the whole of section 3(a), (b) and (c) must be read as a part of section 2 and as modifying its substantive authority; or, in other words, that section 3 should be read as section 2(a) and that therefore when 3(c) literally reads "provisions of *this section* shall not in any way be construed" etc., the words "this section" applied grammatically to section 2 and not merely to section 3.

■■ This purely literal contention is, in my opinion, not correct. The Act now codified as section 3 was originally enacted by chapter 740 of the Acts of 1947. Reference to that Act will show that while the designation of the Act was section 2A, it distinctly provided that it was added *as a new section*. Purely grammatically, therefore, the wording of section 3(c) relates to its own provisions rather than to section 2. Furthermore and perhaps more importantly, the substantive provision of section 2 was to authorize the Maryland courts to enforce foreign statutes while the whole of the new section (originally 2A now 3) deals with matters of procedure rather than matters of substantive law. In any event I think section 3(c) is not sufficiently clear in the light of the whole history of the subject matter in Maryland legislation, to warrant the defendants' particular contention, as has so well been pointed out by Judge Thomsen in Kaufmann v. Service Trucking Co., Inc., D.C., 139 F.Supp. 1, the only Maryland case, state or federal, brought to my attention and directly in point on the construction and application of subsection 3(c). In that case the court refused to dismiss a suit brought in this court by an Illinois administrator based on the Virginia death statute, Code 1950, § 8–633 et seq. See also another opinion by Judge Thomsen, King v. Cooper Motor Lines, D.C., 142 F.Supp. 405.

■ With regard to the defendants' contention based on Erie R. Co. v. Tompkins, 1938, supra, I held in Smith v. Bevins, D.C.1944, 57 F.Supp. 760 that this court could enforce a foreign death statute where there was diversity of citizenship and venue. And the two later decisions of Judge Thomsen above cited are to the same effect on this point.

■ But while I have thought it worth while to consider with some particularity the proper construction and application of subsection (c) in the gradual development of the Maryland law with respect to the subject matter, there is a much more controlling consideration in this particular case. The wording of sections 2 and 3 quite clearly shows that the Legislature was dealing with the authority of and procedure in Maryland State Courts alone, while here we are necessarily dealing with the requirements of federal jurisdiction and procedure. If it should be held that the proper construction and effect of subsection (c) is to preclude the Maryland courts from entertaining a suit based on a foreign statute such as we have here, unless the plaintiff could show that no such suit could effectively be brought in the foreign State, that limitation cannot restrict the constitutional and statutory authority of his federal court with respect to the enforcement of foreign statutes as required by the full faith and credit clause of the Federal Constitution (Art. 4, § 1) which, as is so well known reads:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

In a comparatively recent case the Supreme Court has dealt with an Illinois statute which, in its wording, is very similar to that of subsection (c). First

**568**

National Bank of Chicago v. United Air Lines, Inc., 1952, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441. In that case an Illinois executor of an Illinois resident killed in Utah by the alleged negligent action of the defendant in an airplane accident, sued in the federal court in Illinois a Delaware corporation, based on the wrongful death statute of the State of Utah. The defendant relied on the doctrine of Erie R. Co. v. Tompkins and more particularly on an Illinois statute which provided "no action shall be brought or prosecuted in this State to recover damages for a death occurring outside of this State where a right of action for such death exists under the laws of the place where such death occurred and service of process in such suit may be had upon the defendant in such place." S.H.A. ch. 70, § 2. Both the District Court and the Court of Appeals for the 7th Circuit, 190 F.2d 493, held that the Illinois statute was a bar to the maintenance of the suit; but the Supreme Court in an opinion by Mr. Justice Black reversed the decision on the ground of the full faith and credit clause. And see also the concurring opinion of Mr. Justice Jackson, joined in by Mr. Justice Minton, to the effect that apart from the possible question as to conflict of laws and difficult questions with respect to the authority of state and federal courts, it was clear that the jurisdictional provisions of federal law, constitutional and statutory, with respect to diversity cases, should be regarded as controlling. See also a shortly prior case in the Supreme Court, Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212, where a Wisconsin statute, W.S.A. 331.03 of similar import was held invalid.

■ For all these reasons I conclude that the motion to dismiss the present suit must be and it is hereby *overruled* by the District Court of the United States for the District of Maryland this 12th day of June, 1958.