**Jerry Robert DAVIDSON, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–97–631–CR, 2–97–632–CR.**

Court of Appeals of Texas,
Fort Worth.

June 18, 1998.

Publication Ordered July 7, 1998.

Scott Brown, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty. and Chief of the Appellate Section, Michael R. Casillas, Christy Jack, Andrew Platt, Asst. Dist. Attys., Fort Worth, for Appellee.

Before DAY, LIVINGSTON and BRIGHAM, JJ.

### OPINION

LIVINGSTON, Justice.

### I. INTRODUCTION

Appellant Jerry Robert Davidson appeals from his convictions for indecency with a child by contact and aggravated sexual assault of a child under 14. In a single point, appellant contends the trial court erred in denying his motion to suppress a confession he gave to a United States customs agent in Great Falls, Montana. We affirm the trial court's judgment.

## II.  FACTUAL BACKGROUND

In 1994, appellant lived in a hotel in Saginaw, Texas with his wife Ima and his two minor daughters, AP.D. and AS.D., who were nine and six at the time.  In April 1994, Ima returned to their hotel room one night after visiting a friend and was told by AP.D. that appellant had put AS.D. on his lap and asked her to "suck his dick."  Ima confronted appellant and he told her that he thought he was talking to her and not their daughter.[1]

The incident was reported to Child Protective Services (CPS).[2]  In November 1994, the children were examined by a doctor who found evidence that both children had been sexually abused.  The children were removed from appellant and Ima's possession in November 1994.

While the investigation was pending, appellant hinted to Ima that they should leave town.  In February or March of 1995, appellant and Ima joined a traveling carnival.  Appellant and Ima crossed over into Canada with the carnival in June 1995.  As the carnival prepared to re-enter the United States, the United States Customs Service ran a routine check on all the carnival workers and, on or about July 21, 1995, special agent Chuck Mazzilli was informed that the check revealed an outstanding Texas arrest warrant for appellant.

Mazzilli detained appellant when he crossed the United States border into Great Falls, Montana.  Mazzilli read appellant his *Miranda* rights and appellant signed an acknowledgment to that effect.  Mazzilli then asked appellant some questions and appellant admitted sexually abusing his two daughters, expressed remorse, and blamed his actions on his drinking.  Appellant also told Mazzilli that he had apologized to his daughters and his wife.  Mazzilli later wrote a report detailing appellant's statements.

On August 29, 1995, appellant was charged with indecency with a child by contact and aggravated sexual assault of a child under 14.

Appellant pleaded not guilty.  Before trial, appellant filed a motion in limine to prevent the State from introducing any of appellant's oral statements without first having a hearing on the admissibility of the statements.  He also filed a motion to suppress his oral statements.  Thus, when the State expressed its intention to call Mazzilli to the stand, the court held a hearing to determine the admissibility of the statements.

During the hearing, Mazzilli testified about the arrest and appellant's statements.  After Mazzilli testified, the State contended the statements were admissible under *Alvarado v. State*, 853 S.W.2d 17 (Tex.Crim.App.1993).  Appellant argued that *Alvarado* was not applicable and that the statements were inadmissible because Mazzilli did not record the statements in accordance with article 38.22 of the Texas Code of Criminal Procedure.

The trial court ruled that, as a matter of public policy, the statements were admissible under the Full Faith and Credit Clause of the United States Constitution because Mazzilli complied with Montana and Federal law in obtaining the statements.  In addition, the trial court made several findings of fact and conclusions of law: (1) appellant was in custody when the statements were made; (2) appellant was given and he waived his *Miranda* rights; (3) appellant made the statements freely and voluntarily; (4) the statements were oral and not recorded; (5) the statements were admissible under the Full Faith and Credit Clause of the United States Constitution; and (6) Agent Mazzilli was not acting under the direction of, or as an agent for, the Saginaw Police Department when the statements were made.

The jury found appellant guilty of both offenses and assessed punishment at 20 years' confinement and a $10,000 fine in the indecency with a child case and 99 years' confinement and a $10,000 fine in the aggravated sexual assault case.

1.  Sometime after the night at the hotel, appellant admitted to Ima that he was drunk and that the episode may have occurred.

2.  The record is unclear as to how the police and CPS learned of the incidents.  Ima stated in her testimony that she contacted CPS sometime after she learned of the occurrence.  Also, a neighbor, Christine Eckenrode, testified that she called the police after the elder daughter confided in her.

## III. DISCUSSION

■ We are faced with a relatively unique question: Is an oral statement of an accused, taken by a federal or out-of-state law enforcement officer in another jurisdiction, admissible in a Texas prosecution where the federal or out-of-state officer complied with the constitutional and procedural safeguards of his or her jurisdiction, but failed to record the oral statement in accordance with article 38.22 of the Texas Code of Criminal Procedure? Because of the public policy considerations discussed below, we find that the oral statements are admissible.

Article IV, section 1 of the United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state. *See* U.S. CONST. art. IV, § 1. However, there is no constitutional requirement that a State yield to the law and statutes of another state in all circumstances. *See Hawkins v. State,* 745 S.W.2d 511, 513 (Tex.App.—Fort Worth 1988, pet. ref'd). In *Hawkins,* this court noted that "[e]ach State has legitimate policy considerations in the enactment of its laws, and there are limits to the extent that these interests must be subordinate to the laws of another state." *See id.* (citing *Nevada v. Hall,* 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416, 426 (1979)).

■ In deciding whether to apply the Full Faith and Credit Clause to a given case, a State must weigh the conflicting public policies at issue. *See Hoffman v. State,* 922 S.W.2d 663, 667 (Tex.App.—Waco 1996, pet. ref'd); *see also Sun Oil Co. v. Wortman,* 486 U.S. 717, 730–34, 108 S.Ct. 2117, 2126–28, 100 L.Ed.2d 743, 757–60 (1988); *Hughes v. Fetter,* 341 U.S. 609, 611, 71 S.Ct. 980, 982, 95 L.Ed. 1212 (1951). The conflicting policies may be those between the two states involved in the case, or it may consist of a battle between the forum state's desire to continue its own public policy versus the state's obligation to further the principle of comity among the several states. *See Hoffman,* 922 S.W.2d at 667; *see also Hughes,* 341 U.S. at 611–12, 71 S.Ct. 980. The forum state need only recognize its sister state's public acts if the balance of the competing public policies so dictates. *See Hoffman,* 922

S.W.2d at 667. Thus, stated another way, "[f]ull faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state; rather, it is for [the deciding court] to choose in each case between the competing public policies involved." *Hughes,* 341 U.S. at 611–12, 71 S.Ct. 980.

Here, we are faced with two competing Texas public policies. First, Texas has a protective interest in seeing that all individuals charged with committing an offense in Texas are afforded the procedural safeguards of article 38.22. Second, Texas has a comity-reciprocity interest in recognizing and legitimizing lawful actions by out-of-state law enforcement officers in cases involving Texas offenses and in seeing that out-of-state law enforcement officers cooperate and aid Texas law enforcement officers in apprehending individuals who flee the State after committing an offense in Texas. We will examine each interest separately then apply the overarching policy interests involved as they relate to the facts of this particular case.

At the outset, we note that appellant does not contest that: (1) he received the *Miranda* warnings and waived his rights; (2) he made the oral statements complained of; (3) Agent Mazzilli's testimony concerning the statements was accurate; or (4) the statements were admissible under federal and Montana law. Thus, our only concern is an issue of law and we will review the trial court's judgment accordingly. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

We first address Texas's protective interest in compliance with article 38.22. This interest weighs heavily in favor of denying full faith and credit to the Montana confession. Section 3 of article 38.22 of the Texas Code of Criminal Procedure dictates that:

No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement.

TEX.CODE CRIM. PROC. ANN. art. 38.22(3)(1) (Vernon 1979 & Supp.1998).

Article 38.22's recording provision is specific to Texas and provides greater protection than the federal constitutional confession provisions. *See Butler v. State,* 493 S.W.2d 190, 190–91 (Tex.Crim.App.1973); *see also Heitman v. State,* 815 S.W.2d 681, 690 (Tex. Crim.App.1991) (holding that Texas can provide for greater rights than those in the federal constitution). The legislature has deemed that the recording provision should be strictly construed. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22(3)(e); *Tigner v. State,* 928 S.W.2d 540, 543 (Tex.Crim.App.1996). *But see* TEX.CODE CRIM. PROC. ANN. art. 38.22(5) (containing list of exceptions to the recording requirement). Article 38.22's recording provision was designed "to provide defense counsel with an actual electronic recording so that [they] might subject it to expert analysis to determine its accuracy." *Tigner,* 928 S.W.2d at 543.

On the other hand, Texas also has a comity-reciprocity interest in: (1) recognizing and legitimizing lawful actions by out-of-state law enforcement officers in cases involving Texas offenses; and (2) seeing that out-of-state law enforcement officers cooperate and aid Texas law enforcement officers in apprehending individuals who flee after committing an offense in Texas. We believe these interests weigh heavily in favor of giving full faith and credit to the Montana confession. Were we to invalidate the confession, and implicitly condemn a fellow State's law, we would risk the loss of future cooperation in cases such as this where an individual flees Texas in order to escape prosecution. Moreover, we would lose the benefit of an otherwise valid, and uncontested confession, and perhaps even encourage flight, simply because the out-of-state officer was ignorant of Texas law. Public policy dictates that Texas should encourage out-of-state law enforcement personnel to perform their duties and, when the exercise of those duties unearths an otherwise lawful confession, Texas should reap the benefits of the confession, not turn our collective back on it. Such is the nature of professional reciprocity and common sense.

Thus, one interest weighs in favor of giving the Montana confession full faith and credit and one interest weighs against giving the confession full faith and credit. However, our analysis does not end there. Although we recognize applying the full faith and credit clause in this situation is a novel approach, we base our decision in part on the actions of other Texas courts that have faced analogous situations. In exigent circumstances, Texas courts have routinely upheld the admittance of confessions that do not meet the strict requirements of article 38.22. In *Alvarado,* the defendant shot a man in an altercation in El Paso then fled across the border to Juarez, Mexico. *See Id.* at 19. The El Paso police tipped the Juarez police, who picked up the defendant and took him into custody. *See Id.* Following the Mexican Code of Criminal Procedure, the Juarez police interrogated the defendant and obtained a confession that was introduced in his Texas prosecution. *Id.*

The Court of Criminal Appeals upheld the admissibility of the confession, despite the fact that the defendant was not given the normal *Miranda* warnings. *See Id.* at 19, 24. The court found that: (1) *Miranda* does not apply to confessions obtained by foreign officials; (2) the Juarez police complied with the applicable Mexican law; (3) the confession did not shock the conscience of the court; (4) U.S. law enforcement personnel did not participate in the interrogation; and (5) the Juarez police were not acting as the agents for the El Paso police. *See id.* at 20–24.

In *White v. State,* 779 S.W.2d 809 (Tex. Crim.App.1989), the court held that an out-of-state law enforcement officer's substantial compliance with the warning requirements of article 38.22 was sufficient to make the defendant's written confession admissible. *See Id.* at 827. Also, in *Perillo v. State,* 758 S.W.2d 567 (Tex.Crim.App.1988), the court upheld the admittance of a Denver confession despite the fact that the Denver police failed to warn the defendant she had the right to terminate the interview at any time. *See Id.* at 574–75.

Another interesting case is *Laird v. State,* 933 S.W.2d 707 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). In *Laird,* the juvenile defendant killed an individual in Hous-

ton, Texas then fled to Pennsylvania. *Id.* at 709–10. The Houston police notified the Pennsylvania police and the defendant was located and taken into custody. *Id.* at 710. The defendant was put in a separate cell and then he made an oral confession that was not the product of interrogation. *Id.* at 713. Because of the differences in Texas and Pennsylvania law, the court was faced with a situation where Texas law afforded greater protections to juveniles—the use of a separate juvenile processing unit in addition to the use of a separate cell—than did Pennsylvania. *Id.* After noting that the Pennsylvania police fully complied with their own law, the court refused to hold that the Pennsylvania detention was unlawful in the Texas prosecution simply because it did not comply with Texas law. *Id.* at 714.

Thus, Texas courts have recognized that otherwise lawful confessions obtained by out-of-state law officers need not always be suppressed. Still, Texas's protective interest appears to outweigh its comity-reciprocity interest, that is until one analyzes the facts of this case.

First, as noted above, appellant did not contest at trial, and he does not contest on appeal, that he was given and then waived his *Miranda* rights, that he made the statements complained of, or that Agent Mazzilli's testimony reflected the events that transpired during their conversation. Thus, the fundamental purpose of the added protection of the recording provision—to further ensure the content of the confession and the accuracy of the officer's recollection—is not triggered by the facts of this case. *See Tigner*, 928 S.W.2d at 543; *Alvarado*, 853 S.W.2d at 21–22 (noting that defendant volunteered his statement and did not complain about anything unusual or shocking about the manner in which the statement was obtained). In effect, Texas's additional recording requirement is rendered superfluous under the facts of this case.

Second, appellant does not contest the fact that Mazzilli complied with the applicable law in his jurisdiction. *See Alvarado*, 853 S.W.2d at 20; *Laird*, 933 S.W.2d at 713–14. Thus, there is no allegation that Mazzilli acted improperly in obtaining the confession. *See*

*Alvarado*, 853 S.W.2d at 20–21 (noting that use of *Miranda* warnings is a "prophylactic measure" designed to protect "our citizens from our state and our federal governmental actions."). We cannot imagine placing a burden on Texas law enforcement officers to educate their brethren in other States on the intricacies of Texas law, just as we cannot imagine requiring law enforcement officers from other states to learn our laws. Any such requirement would be unworkable and unrealistic.

Third, the evidence is clear that Saginaw police did not participate in the interrogation and that Agent Mazzilli was not an agent for the Saginaw police. *See id.* at 24 (noting that an out-of-state officer does not become an agent for Texas police department merely because the department informs the out-of-state officer of the movements of a fugitive). The Saginaw police sent out a general arrest warrant and Agent Mazzilli came upon the warrant as part of an independent Customs investigation into the backgrounds of those persons who attempt to enter the United States. Thus, Mazzilli had an independent reason for interrogating appellant. *See id.* at 23 (noting that Juarez police had independent reason for obtaining a confession from defendant).

For these reasons, we find that public policy dictates that, under the narrow circumstances of this case, Texas should afford full faith and credit to appellant's otherwise lawful confession, despite the fact that it was not recorded pursuant to article 38.22. We note that our decision does not mean that any and all out-of-state confessions that fail to comply with article 38.22 will be given full faith and credit. Thus, we overrule appellant's sole point and affirm the trial court's judgment.