Joseph A. YACOVONE

v.

William F. BOLGER, Postmaster General of the U. S. et al., Appellants.

No. 79–2043.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1980.

Decided Feb. 20, 1981.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Peter E. George, Asst. U. S. Attys., and Stephen E. Alpern, Associate Gen. Counsel, United States Postal Service, Washington, D. C., were on brief, for appellants. Ann S. Du-Ross, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellants.

Leonard W. Belter, Washington, D. C., with whom C. Dennis Ahearn, Washington, D. C., was on brief, for appellee.

Before WRIGHT, TAMM, and MacKIN-NON, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this case we are called upon to decide whether the United States Postal Service exceeded its statutory authority in dismissing one of its employees. Two issues are raised: whether the Service was arbitrary or capricious in its decision that the dismissal promoted the "efficiency of the service" within the meaning of the relevant statute; and whether the dismissal was barred by a state pardon granted to the employee for

conviction of the crime that triggered his removal. Because we find that the Service was not arbitrary or capricious in its decision, and that the pardon did not bar the removal, we uphold the removal action, and reverse the decision of the district court.

## I. BACKGROUND

On April 20, 1975, Joseph A. Yacovone, Postmaster of Morrisville, Vermont (plaintiff), was arrested and charged with petty larceny in connection with the shoplifting of goods worth approximately eight dollars from the Grand Union Supermarket in Morrisville. Plaintiff sought psychiatric help the same day. On June 3, 1975, he was arraigned in Vermont District Court and entered a plea of not guilty. On August 6, plaintiff's psychiatrist dismissed him from treatment, explaining later that he felt that plaintiff had been cured of the underlying problems which contributed to his shoplifting. Joint Appendix (J.A.) at 27.

On September 15, 1975, plaintiff appeared again before Vermont District Court, withdrew his previously entered plea of not guilty, and entered a plea of guilty. The record indicates that this action was taken as a result of plaintiff's alleged unwillingness to spend thirty days in a state mental hospital under observation, which the plea of not guilty by reason of insanity would have necessitated. J.A. at 41. Plaintiff was sentenced to serve up to ninety days in jail. The court suspended sentence, however, conditional upon his making restitution and continuing counseling. J.A. at 6. His conviction was noted in three local newspapers. J.A. at 9–13.

By letter of October 28, 1975, F. W. O'Brien, Sectional Center Facility Manager and Postmaster of Burlington, Vermont, advised plaintiff that the Postal Service proposed to remove him from his position based upon "conviction of a crime for which a ninety (90) day suspended sentence was imposed." J.A. at 6. Plaintiff was given ten days to reply in person or in writing or both, after which the decision would be made. On November 4, plaintiff and his then-counsel met with Mr. James F. How-ard, District Manager, White River Junction District, and responded to the charges in the letter of October 28. By letter dated November 12, 1975, Mr. Howard decided that "the charges ... are fully supported by the evidence" and warranted plaintiff's removal from office. J.A. at 18.

On November 18, 1975, the Vermont District Court ordered the closing of plaintiff's probationary period. On November 28, plaintiff appealed his removal to the Federal Employee Appeal Authority (F.E.A.A.), and a hearing was set for January 15, 1976. Two days before that hearing, Governor Salmon of Vermont granted Yacovone a "Full and Unconditional Pardon" from the judgment and sentence of September 15. J.A. at 22. On April 2, 1976, the F.E.A.A. issued its decision upholding the removal.

Shortly thereafter, plaintiff requested the Civil Service Commission Appeals Review Board (A.R.B.) to reopen and reconsider the April 2 decision of the F.E.A.A., alleging that the decision of the F.E.A.A. involved an erroneous interpretation of law as to the effect to be given to the pardon. The A.R.B. reopened the case, and found that

[w]hile the State of Vermont may have forgiven [plaintiff] to the extent of a full pardon, this does not vitiate the agency's removal action or bind the Field Office.

J.A. at 34. It therefore affirmed the decision of the F.E.A.A.

On November 30, 1977, plaintiff initiated this action in the district court. On July 26, 1978, the district court held that plaintiff could not be removed for "conviction for a crime" without the Postal Service establishing a "nexus" between the removal and the efficiency of the service. *Yacovone v. Bailar,* 455 F.Supp. 287, 291 (D.D.C.1978), J.A. at 40, 46. By subsequent order, the court remanded the case to the agency for a determination of "whether plaintiff's removal 'will promote the efficiency of the service,' within the meaning of 5 U.S.C. § 7512(a)." J.A. at 47.

A hearing on this question was held on December 7, 1978 before the F.E.A.A. On

February 6, 1979, the Merit Systems Protection Board (M.S.P.B.) (successor of the F.E. A.A. upon the January 1, 1979 reorganization of the Civil Service Commission) issued its decision sustaining the removal of Yacovone. J.A. at 48–53. On May 31, 1979, the district court rejected the findings of the M.S.P.B. and granted plaintiff's motion for a summary judgment on the grounds that no nexus had been established. *Yacovone v. Bailar*, 470 F.Supp. 777 (D.D.C.1979), J.A. at 54. Defendants appeal from this decision.

## II. DISCUSSION

### A. *Nexus*

The "nexus" issue in employment removal actions grows out of the statutory requirement that "an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C.A. § 7513(a) (1980). This long-lived[1] provision has been the subject of thorough administrative and judicial interpretations.

The administrative interpretations—the relevant regulations—set out the factors to be considered by the agency when considering an adverse action against a protected employee. For example, 5 C.F.R. § 731.202, relevant to this case, provides in part:

(a) *General*. In determining whether its action will promote the efficiency of the service, OPM shall make its determination on the basis of:

(1) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance in the position applied for or employed in; or

(2) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities.

(b) *Specific factors*. Among the reasons which may be used in making a

determination under paragraph (a) of this section, any of the following reasons may be considered a basis for disqualification:

. . . . .

(2) Criminal, dishonest, infamous or notoriously disgraceful conduct;

. . . .

(c) *Additional Considerations*. In making its determination under paragraph (a) of this section, OPM shall consider the following additional factors to the extent that these factors are deemed pertinent to the individual case:

(1) The kind of position for which the person is applying or in which the person is employed, including its sensitivity;

(2) The nature and seriousness of the conduct;

(3) The circumstances surrounding the conduct;

. . . . .

(5) The age of the applicant or appointee at the time of the conduct;

(6) Contributing social or environmental conditions;

(7) The absence or presence of rehabilitation or efforts toward rehabilitation.

A second relevant provision is found in Chapter 751, subchapter 1–2(c)(2) of the Federal Personnel Manual, issued by the Civil Service Commission for the guidance of agencies:

The grade and nature of the position the employee occupies will have a bearing in some situations; for example, misconduct which may warrant a reprimand to an employee in a lower grade may be intolerable if it involves an employee in a supervisory or fiduciary position.

*Id.* (April 18, 1974) (revised December 21, 1976; quoted provision remains in effect). The Postal Service claims that application of these regulations to this case supports its dismissal of plaintiff.

---

1. 5 U.S.C.A. § 7513(a) (1980) was enacted as § 204(a) of Pub.L. No. 95–454, Title II, 92 Stat. 1136, which effected a reorganization of the Civil Service. The requirement as applied to preference eligible employees, to which class plaintiff belonged, J.A. at 24, was found previously at § 7512, Pub.L. No. 89–554, 80 Stat. 528 (1966).

The role of the courts in this area of federal employment relations is strictly limited. As long as the decision of the agency is not arbitrary or capricious,[2] was reached in accordance with relevant procedural requirements, and does not otherwise violate the Constitution, it must be affirmed by the courts. *Doe v. Hampton*, 566 F.2d 265, 271–72 (D.C.Cir.1977). As the case law has developed, courts have framed the "efficiency of the service" issue in terms of requiring a "nexus" between, as this court phrased it in *Doe v. Hampton*, "the articulated grounds for an adverse personnel action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate governmental interest promoting the 'efficiency of the service.'" *Id.* at 272. In some cases, the nexus must be explicitly demonstrated by the agency; *e. g., Phillips v. Bergland*, 586 F.2d 1007, 1011 (4th Cir. 1978); *Norton v. Macy*, 417 F.2d 1161 (D.C. Cir.1969). In others, the nexus can be inferred from the circumstances of the dismissal; *e. g., Doe v. Hampton, Gueory v. Hampton*, 510 F.2d 1222 (D.C.Cir.1974).

In this case, an explicit nexus determination was made by the agency upon order of the district court. The agency's conclusion that plaintiff's removal would promote the efficiency of the service was then rejected by the district court as arbitrary and capricious. Our task is to review this rejection. Our conclusion is that the district court did not apply the proper law in evaluating the agency's action, and must therefore be reversed.

The M.S.P.B., in its February 6, 1979 decision sustaining plaintiff's removal, found the following:

Undisputed testimony was received that the position of Postmaster in Morrisville, Vermont is one of high stature in the community; that previous Postmasters were persons of integrity, honesty and were upstanding citizens of the town; that the Postmaster is responsible for all revenues received including money across the counter, stamp stock and money orders; that the Morrisville Postmaster was responsible for a $40,000 accountability for the office and part of which consisted of his personal accountability so that at times he could provide counter services such as the sale of stamps and money orders etc., to patrons of the Post Office....

Standing alone, the shoplifting (stealing) of six packages of sugarless gum, one container of sucrets, one package of sanzenta cheese, one package of Grand Union cooked ham, and one package of imported Plumrose cooked ham, the value of which did not exceed $100, and for which the appellant was convicted of petty larceny (misdemeanor) might appear to be de minimus as a cause of action. However, we find that any act of dishonesty involving the goods or property of another, whether on or off the job, by an individual occupying a fiduciary position such as Postmaster to be a serious breach of conduct.

... With the amount of publicity given the case, we find it more likely than not that few, if any, of the Morrisville Post Office patrons were unaware of the appellant's conviction.

. . . . .

... On the basis of the preponderance of the credible evidence, we find that the appellant's conviction did have a significant effect on his reputation for honesty and integrity.

J.A. at 50–52. In other words, the plaintiff, taking into account the specific circumstances of this case, committed a "serious breach of conduct," of which many of the Morrisville Post Office patrons were aware, and which had "a significant effect on his reputation for honesty and integrity" and thereby a significant effect upon the efficiency of the Postal Service. There is no law which dictates that a federal employee in plaintiff's position cannot be removed upon such a showing.

**2.** We have discussed elsewhere the nature of the review called for by the application of the arbitrary or capricious standard to employee dismissal cases. *See Doe v. Hampton*, 566 F.2d 265, 271 n.15 (D.C.Cir.1977).

The standard applied by the district court is based upon a "forward-looking analysis of plaintiff's behavior." 470 F.Supp. at 778, J.A. at 55. As set out by the court:

The review board must discern whether 'potentially embarrassing conduct' is reasonably foreseeable, and accordingly, the MSPB must look to see whether the particular employee will take any action which might interfere with the efficiency of the service.... The concerns of the local populace are not significant unless they reflect, or otherwise indicate, that potentially embarrassing conduct is foreseeable....

In sum, the evidence presented to the MSPB provided absolutely no indication that Mr. Yacovone's future conduct might interfere with the efficiency of the postal service. Accordingly, the decision of the MSPB must be set aside as arbitrary and capricious.

470 F.Supp. at 778, J.A. at 55–56. The only case cited in the district court's opinion is *Norton v. Macy*, 417 F.2d 1161 (D.C.Cir. 1969), in which this court reversed the discharge of a homosexual budget analyst at NASA for "immoral conduct." In *Norton*, the court's decision was expressly based on certain factors not present in this case: that the dismissal "involves an intrusion upon [an] ill-defined area of privacy"; that the removal was premised on a moral judgment; and that "[a]ppellant's duties apparently did not bring him into contact with the public, and his fellow employees were unaware of his 'immorality.'" 417 F.2d at 1164, 1165, 1167. In each of these respects, the case before us must be distinguished. Moreover, the court in *Norton* stated that:

if [an employee's] conduct is notorious, the reactions of other employees and of the public with whom he comes in contact in the performance of his official functions may be taken into account. Whether or not such potential consequences would justify removal, they are at least broadly relevant to "the efficiency of the service."

417 F.2d at 1166. There is, thus, little support in *Norton* for the "forward-looking analysis" of the district court. The post-*Norton* cases, such as *Doe v. Hampton*, 566 F.2d 265 (D.C.Cir.1977), and *Gueory v. Hampton*, 510 F.2d 1222 (D.C.Cir.1974), also do not support the district court.

■ This is not to say that this court is insensitive to the problem that the district court's standard seems designed to guard against: primarily, the reflex dismissal of federal employees for "minor" criminal conduct, in circumstances in which the removal seems a more severe sentence than was handed down by the court.[3] The law requires us, however, to apply a different standard. Convinced, as we are, that the Postal Service was not arbitrary or capricious in its conclusion that plaintiff's dismissal would promote the efficiency of the service, we must uphold its action.

B. *Pardon*

On January 13, 1976, approximately two months after the effective date of plaintiff's removal as Postmaster of Morrisville, Vermont, and two days before the hearing on appeal of the dismissal before the F.E.A.A., the Governor of Vermont granted plaintiff a "Full and Unconditional Pardon from the ... judgment and sentence" of September 15th.[4] At the F.E.A.A. hearing,

---

3. *See, e. g.*, this court's opinion in *Gueory v. Hampton*, 510 F.2d 1222, 1226 (D.C.Cir.1974), where we emphasized that conviction for "activities of a minor nature, such as a traffic citation" might call for a more searching nexus analysis than was required in that case, which involved a manslaughter conviction. Such an analysis was made in this case. In addition, we emphasize that the fact that plaintiff occupied a position of authority with fiduciary responsibilities plays a central part in our decision today. We believe that *Taffell v. Hampton*, 463

F.2d 251 (5th Cir. 1972) (per curiam) and *Marsden v. United States*, 410 F.Supp. 289 (D.Minn. 1976), provide support for our decision here that the action taken by the Postal Service was neither arbitrary nor capricious.

4. The pardon and its accompanying documentation do not state that the pardon was granted because plaintiff was, in fact, innocent of the crime to which he pled guilty. *See* the opinion of the Office of the General Counsel, Civil Service Commission, excerpted in the F.E.A.A. decision of April 2, 1976, J.A. at 28–29. The

plaintiff's lawyer argued that the pardon "... wipes out totally the conviction, the sentence, the entire procedure." J.A. at 27. Aware that the reason given by the Postal Service for removal was "conviction of a crime for which a ninety (90) day suspended sentence was imposed," the F.E.A.A. sought the opinion of the Office of the General Counsel, Civil Service Commission, as to the effect of the pardon on this use of the conviction. The Office of the General Counsel, after reviewing the case law on the question, concluded that the

> [pardon] does not ... wipe out the conviction for purposes of Federal employment. A State pardon, just as any other act of a different sovereign, is not normally binding upon the Federal Government. In determining employee suitability or cause for removal, the Federal agency must evaluate the effect of the pardon or other State act for itself. It may choose to ignore the pardon ....
>
> It is not an abuse of discretion for an agency to base a removal action on a conviction that is no longer of record when the act of removing it from the record is a State act. See, for example, *Taylor v. United States Civil Service Commission*, 374 F.2d 466 (9th Cir. 1967), where the original notice seemed to be based on arrests, pleadings and convictions which were expunged under State law.

district court stated that the pardon was granted "in partial recognition" of the fact that "Mr. Yacovone's crime was the result of mental illness which has now been cured." 470 F.Supp. at 778, J.A. at 56. The court cites no authority for this conclusion.

Under these circumstances, suggestions that pardons granted for innocence may deserve different treatment than pardons granted for other purposes, *e. g., Thrall v. Wolfe*, 503 F.2d 313, 316 n.4 (7th Cir. 1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975); *Richards v. United States*, 192 F.2d 602, 606 (D.C.Cir.1951), *cert. denied*, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703 (1952), are not relevant. Our discussion herein is limited to "full" pardons of the type granted in this case.

5. *Turner v. Campbell*, 581 F.2d 547, 548–49 (5th Cir. 1978) and *Taylor v. United States Civil*

J.A. at 28.[5] The F.E.A.A. adopted this conclusion, although it seemed to limit its decision to cases in which the pardon was granted subsequent to the decision to remove.

> [W]e find that the conviction of September 15, 1975, was a public record when the agency determined that Mr. Yacovone's removal was warranted and the subsequent pardon, after the removal had been carried out, did not preclude the offering of the record of conviction into evidence. Whether or not the granting of the pardon indicates that Mr. Yacovone is now rehabilitated would be a matter for consideration for a prospective employer, not for our adjudicating the merits of the previous removal action taken by the agency.

J.A. at 30.

Plaintiff argues here, as he did below, that the pardon granted him by the Governor of Vermont bars his removal. He would have us reach this result by combining Vermont law on the broad effect to be accorded full pardons with 28 U.S.C. § 1739, one of the statutory full faith and credit provisions. Section 1739 provides, in relevant part, that

> [a]ll nonjudicial records or books kept in any public office of any State, Territory, or Possession of the United States, or copies thereof, shall be proved or admitted in any court or office in any other State, Territory, or Possession by the

*Service Commission*, 374 F.2d 466, 470 (9th Cir. 1967), both of which upheld federal use of convictions expunged under state statutes, are not relevant to our discussion. The *Taylor* opinion makes clear that the dismissal at issue there was based on the conduct involved, not on the fact of conviction, 374 F.2d at 469; moreover, the court cites *In re Paoli*, 49 F.Supp. 128, 130 (N.D.Cal.1943), for the proposition that, under the California expungement law in question, an expunged conviction does not blot out the underlying act. In the instant case, by contrast, the conviction itself is the essence of the removal action; furthermore, Vermont law, at least arguably, bars the use of the conviction as a result of the pardon. *Turner* adheres to the result stated in *Taylor* without discussion.

attestation of the custodian of such records or books....

. . . . .

Such records or books ... shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken.

28 U.S.C. § 1739 (1976). In this case, as we have seen, the pardon was granted after the removal action was taken by the Postal Service. Whether the pardon would be given "retroactive" effect to bar the removal even under Vermont law is a disputed point.[6] The answer is not necessary, however, to a decision in this case. Even if Vermont law would give it such effect, the Postal Service and the F.E.A.A. need not follow its lead.

Assuming that the pardon would be given full effect in these circumstances under Vermont law, the controlling question then becomes whether, in these circumstances, a federal entity must give the Vermont pardon the same effect as would be given it by an entity of Vermont. Plaintiff cites 28 U.S.C. § 1739 as requiring the federal entity to accord full effect to a state pardon under these circumstances. In fact, this statutory provision tells only part of the story.

 The courts that have considered this issue are united on certain principles. First, it is agreed that the constitutional full faith and credit clause, Art. 4, § 1, does not reach the question of what effect federal entities must give state pardons. *United States v. Matassini*, 565 F.2d 1297 (5th Cir. 1978); *United States v. Sutton*, 521 F.2d 1385 (7th Cir. 1975); *Thrall v. Wolfe*, 503 F.2d 313 (7th Cir.), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975). Second, 28 U.S.C. § 1739 and its predecessor and companion statutes do "extend [ ] the rule [of the full faith and credit clause] of the Constitution to all courts, federal as

well as state." *Davis v. Davis*, 305 U.S. 32, 40, 59 S.Ct. 3, 6, 83 L.Ed. 26 (1938). To the same effect is *American Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir.), *cert. denied*, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489 (1972). Third, Congress, pursuant to the supremacy clause, can, by clear expression of its intention, limit the effect given to state pardons. *Matassini*, 565 F.2d at 1313–14 (although note 5 at 1300 seems to reserve this question); *Sutton*, 521 F.2d at 1389, *Thrall*, 503 F.2d at 316. This was done, for example, in title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.App. § 1203(2) (1976), where Congress set down the conditions which a state pardon would have to meet to be effective under the Act.

 The question that remains is what consideration a state pardon should receive where its effect has not been expressly limited by Congress. Here, too, the way is lighted for us. It is well established that in constitutional full faith and credit disputes between states, an analysis measuring the interests of the various states is appropriate. For example, in *Hughes v. Fetter*, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951), the Supreme Court held that

full faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state; rather, it is for this Court to choose in each case between the competing public policies involved. The clash of interests in cases of this type has usually been described as a conflict between the public policies of two or more states. The more basic conflict involved in the present appeal, however, is as follows: On the one hand is the strong unifying principle embodied in the Full Faith and Credit Clause looking toward maximum enforcement in each state of the obligations or rights created or recognized by the statutes of sister states; on the other hand is the policy of Wisconsin ....

---

**6.** Plaintiff asserts that if Vermont law applies the removal is barred; he does not discuss the retroactivity question. The Postal Service claims that the pardon is irrelevant because retroactive effect should not be given to it. The agency does not establish, however, that Vermont law would consider this use of the pardon to be retroactive.

*Id.* at 611–12, 71 S.Ct. at 981–82 (footnotes omitted). *American Mannex* raises the particular question at issue here—the conflict of competing federal policies with the federal policy expressed in the full faith and credit statute. 462 F.2d at 690.[7] In this case, we believe that the result of such a balancing of interests is clear. The state interest in having a pardon given "full faith and credit" in a federal employment decision, even combined with the federal interest in enforcement of the statutory full faith and credit provision, is clearly outweighed by the federal interest in maintaining discretion in making its employment decisions. To decide otherwise would be to limit unwisely the power of the federal government in its role as employer.[8] For example, in this case, the pardon, although "Full and Unconditional," recited no grounds for its granting. If we assume, like the district court, that the reason was complete rehabilitation, we are still left with the problem of post office patrons refusing to take their business to a postmaster who has been convicted of a crime involving theft. This "reputation interest" —the federal interest in having a postmaster whose reputation does not represent an obstacle to the efficiency of the service—is clearly a legitimate factor for the Service to consider under the relevant precedent. *Wathen v. United States,* 527 F.2d 1191, 1200–01 (Ct.Cl.1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *Norton v. Macy,* 417 F.2d at 1166; *McDowell v. Goldschmidt,* 498 F.Supp. 598, 605 & n.25 (D.Conn.1980).

■ Having established that the state pardon does not bar the removal action, we must still review the consideration that the agency accorded the pardon as a factor mitigating the conviction. The regulations expressly acknowledge the relevance of evidence of this type by including as an "additional consideration" under 5 C.F.R. § 731.-202(c):

> (7) The absence or presence of rehabilitation or efforts toward rehabilitation.

Proof of an unconditional pardon would certainly be relevant in many dismissal actions. The effect to be given to it would vary, however, with the circumstances of each case. Here, the F.E.A.A. was fully aware of the pardon and decided that its granting was not sufficient reason to reverse the removal action. Under the circumstances—a position of trust, conviction for theft, public knowledge of the conviction, evidence of public reluctance or refusal to continue to deal with the Morrisville Post Office if plaintiff remained as Postmaster— we cannot conclude that the decision of the agency to accord the pardon only limited weight was arbitrary or capricious.

## III. CONCLUSION

The district court's "forward-looking analysis" does not accurately state the law as to the required nexus between removal and the efficiency of the service. We believe that use of the proper analysis reveals that the Postal Service was not arbitrary or capricious in its conclusion that the required nexus exists. Moreover, plaintiff's contention that his reinstatement is required in order that "full faith and credit" be given to his state pardon is without merit. The decision of the district court is, therefore, reversed, and the removal by the Postal Service is upheld.

*It is so ordered.*

---

7. The problem also arises in connection with actions under 42 U.S.C. § 1981 in which the claim has previously been litigated in a state forum and full faith and credit is sought for the state judgment under 28 U.S.C. § 1738. In this situation, courts have expressly weighed the federal interest in statutory full faith and credit against other federal interests. *See, e. g., Winters v. Lavine,* 574 F.2d 46, 55 (2d Cir. 1978); *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 274–77 (2d Cir. 1977).

8. The strength of the governmental interest in controlling its own employment policy was addressed in a different context in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), where the Supreme Court decided that the power to make decisions on such employment-related questions as wages and hours was essential to the "separate and independent existence" of the governmental units there under discussion— the states. 426 U.S. at 851, 96 S.Ct. at 2474.