805 F.2d 295
 John P. MUNNELLY, Appellant,
v.
The UNITED STATES POSTAL SERVICE, a Public Corporation;
William P. Bolger, Individually and as Postmaster General of
the United States; Thomas F. Ranft, Individually and as
Regional Director of Mail Processing Department, Central
Regional Office, United States Postal Service, Appellees.
 No. 85-2138.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1986.
Decided Nov. 12, 1986.
 
 M.J. Bruckner, Lincoln, Neb., for appellant.
 R. Andrew German, Washington, D.C., for appellees.
 Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 John P. Munnelly appeals from a judgment of the district court[1] denying him reinstatement to his former position of Sectional Center Manager, Postmaster at Omaha, Nebraska. The Post Office Department discharged Munnelly, who had been appointed by the President in 1963 as Postmaster at Omaha, and later became SCM/Postmaster of the Omaha Post Office in a reorganization of the United States Postal Service. Munnelly had entered a nolo contendere plea to three charges brought by the Nebraska Accountability and Disclosure Commission for receiving reimbursement for long distance telephone calls for personal use. He was ordered to pay $1,000 in civil penalties for each of three violations and to make restitution to the State of Nebraska. The Postal Service discharged Munnelly and after exhausting his administrative remedies by obtaining review to no avail from a regional official and then from the Postmaster General, he brought this action in the district court. On appeal he argues as he did in the district court that as a presidential appointee he could be removed only by impeachment, that the discharge for off-duty conduct was arbitrary and capricious because the nolo contendere plea could not have been used as a basis for a finding of misconduct, and that several procedural flaws deprived him of due process. We affirm the judgment of the district court.
 
 
 2
 Munnelly was appointed Postmaster at Omaha by President John F. Kennedy on June 19, 1963. In 1972, following the reorganization of the Postal Service, his duties were expanded to include that of Sectional Center Manager over 127 post offices and postmasters in Western Iowa and Eastern Nebraska. In June 1982, his duties were further expanded to include 250 such post offices and postmasters.
 
 
 3
 The Postal Service brought charges against Munnelly on July 7, 1982, seeking his removal based on a nolo contendere plea to an action of the Nebraska Accountability and Disclosure Commission (NADC) in levying civil penalties against him and the publicity generated by the Omaha World Herald concerning this incident.
 
 
 4
 Munnelly had been a member of the Board of Directors of the Omaha Public Power District. On February 19, 1982, the NADC charged Munnelly with using a credit card for telephone calls and causing the Omaha Public Power District to pay for the long distance calls for other than district business and for personal financial gain. Further, he was charged with using district funds for personal financial gain by failing to properly account for travel expenses.[2] Munnelly pleaded nolo contendere to these charges. He was ordered to pay the maximum civil penalty of $1,000 for each violation, and to make restitution to the State of Nebraska. The findings of violations and the penalty imposed were given front-page coverage in the Omaha World Herald and Munnelly was identified as the Omaha Postmaster.
 
 
 5
 Munnelly was issued a Notice of Proposed Removal from the Postal Service by Robert Bates, the District Manager of the Mid-America Division. The charges, penalties, and press coverage were cited together with the charge that his misconduct was incompatible with his position and prejudicial to the interest of the Postal Service. His conduct was claimed to be inconsistent with the Postal Service's Employee and Labor Relations Manual.[3] The notice informed Munnelly that Thomas K. Ranft, Regional Director of Mail Processing for the Central Region, Chicago, Illinois, would render a decision. Munnelly answered the charges in writing, did not deny them, and did not object to Ranft serving as the deciding official. On August 10, 1982, Ranft issued the letter of decision finding that the charges were supported by the evidence and warranted removal. This decision was appealed to the then Regional Postmaster General, Central Division, Paul W. Carlin. Munnelly advised Carlin that no hearing was necessary and that he did not object to Carlin being the Step I official. After reviewing the record, Carlin issued his decision letter concluding that the charges were supported by the evidence and warranted removal. This decision was appealed to the Postmaster General, and thereafter Nancy L. George, Assistant Postmaster General, Employee Relations Department, reviewed the decision and affirmed the removal.
 
 
 6
 Munnelly then filed this action seeking reinstatement, and a temporary restraining order was issued. During discovery Munnelly developed that there was a meeting in May or June, 1982, attended by Carlin and other officials and possibly Ranft. Munnelly claims that this meeting was contrary to Postal Service regulations. At trial, Munnelly raised the question of the authority of the Postal Service to remove a presidential appointee, as well as the propriety of his removal based on a nolo contendere plea to the civil charges and the procedural violations. The district court entered its order sustaining the discharge.
 
 
 7
 On this appeal Munnelly raises the same three issues decided against him by the district court, namely, that the presidential appointment renders the action of the service contrary to Articles I and II of the Constitution, that the grounds for removal were arbitrary and capricious, and that procedural flaws infected his removal.
 
 I.
 
 8
 Munnelly argues that he, as a presidential appointee with the advice and consent of the Senate, cannot be removed by the Postal Service but rather must be removed by the President or impeached and convicted pursuant to Article I of the Constitution. In support of this position, he cites Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926). He further argues that the Postal Reorganization Act of 1970, Pub.L. No. 91-375, 84 Stat. 719 (1970), did not alter his status as a presidential appointee and did not give the Postal Service the authority to remove him.
 
 
 9
 We are satisfied that the district court correctly held that the Postal Reorganization Act eliminated Munnelly's presidentially appointed position and established a new system under which Munnelly was employed by the Postal Service as a postmaster. He thus was subject to discipline and removal by the Postal Service pursuant to 39 U.S.C. Sec. 1001(e)(2), (3) (1982).
 
 
 10
 In Myers v. United States, the Supreme Court invalidated a statute requiring Senate consent to presidential removal of postmasters whom the President originally appointed with the Senate's advice and consent. 272 U.S. at 176, 47 S.Ct at 45. However, the Court has long recognized that subsequent congressional legislation may modify the terms of a presidential appointment. See Crenshaw v. United States, 134 U.S. 99, 108-09, 10 S.Ct. 431, 434, 33 L.Ed. 825 (1890) (naval cadet may have term of office modified by statute enacted subsequent to his appointment); cf. Head v. The University, 86 U.S. (19 Wall.) 526, 530-31, 22 L.Ed. 160 (1873) (state employee who held office "subject to law" may be removed by statute enacted subsequent to his appointment). The Court has also held that Congress has the authority to discontinue a post office where the effect of the discontinuance is to discharge a presidentially appointed postmaster. Ware v. United States, 71 U.S. (4 Wall.) 617, 633-34, 18 L.Ed. 389 (1867).
 
 The Postal Service has the authority:
 
 11
 (2) to hire, promote, transfer, assign, and retain officers and employees in positions within the Postal Service, and to suspend, demote, discharge, or take other disciplinary action against such officers and employees;
 
 
 12
 (3) to relieve officers and employees from duties because of lack of work or for other legitimate reasons;
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 39 U.S.C. Sec. 1001(e)(2), (3).
 
 
 16
 Congress has provided that personnel decisions be free from political influence and considerations. 39 U.S.C. Sec. 1002(a)-(e). The Postal Reorganization Act specifically addressed the issue of the status of persons employed by the Postal Service prior to its reorganization as follows:
 
 
 17
 Officers and employees of the Post Office Department shall become officers and employees of the United States Postal Service * * * The provisions of this section shall not apply to persons occupying the positions of Postmaster General, Assistant Postmasters General, General Counsel, or Judicial Officer. This section shall not be construed, however, to prohibit the appointment of such persons to positions in the Postal Service.
 
 
 18
 Postal Reorganization Act Sec. 8, 84 Stat. at 783.
 
 
 19
 Thus, postmasters and other employees of the abolished Post Office Department became employees of its successor organization, the United States Postal Service, and became subject to direction, discipline, and removal by the Postal Service as provided in 39 U.S.C. Sec. 1001(e). Congress had the authority to change the terms and conditions of Munnelly's presidential appointment. Crenshaw, 134 U.S. at 109, 10 S.Ct. at 434. We hold that Congress did so, eliminating Munnelly's former position and establishing a new system under which he was employed by the Postal Service.
 
 
 20
 Since Congress gave the Postal Service the authority to discharge Munnelly, "it was lawful for the [Postal Service] to exercise it, notwithstanding the postmaster had been appointed by the President, by and with the advice and consent of the Senate." Ware, 71 U.S. (4 Wall.) at 633. We affirm the district court's conclusion.[4]
 
 II.
 
 21
 Munnelly argues that his nolo contendere plea could not be utilized by the Postal Service as a basis for his discharge, and that the district court erred in finding that a nexus existed between the NADC finding of civil violations based on his nolo plea and the efficiency of the Postal Service. Thus, he claims, his removal was arbitrary and capricious. He also contends that the newspaper publicity resulting from the NADC finding was improperly considered by both the Postal Service and the district court as an additional basis for his removal.
 
 
 22
 We recognize that our role in reviewing the basis for Munnelly's removal is limited: "Judicial review of dismissal from federal employment is limited to a determination that the applicable procedures have been complied with, and that the dismissal was supported by substantial evidence and was not arbitrary or capricious." Ross v. United States Postal Service, 664 F.2d 191, 192 (8th Cir.1981) (citing Alsbury v. United States Postal Service, 530 F.2d 852, 854 (9th Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976)). We must also consider whether the district court properly determined that a nexus exists between Munnelly's off-duty conduct and "[promotion of] the efficiency of the service." 5 U.S.C. Sec. 7513(a) (1982); see Graybill v. United States Postal Service, 782 F.2d 1567, 1573 (Fed.Cir.1986).
 
 
 23
 Munnelly first contends that the NADC findings of civil violations cannot constitute substantial evidence supporting his discharge because the findings were based on his plea of nolo contendere before the NADC. He argues that a nolo plea cannot be used against a person entering such a plea in any subsequent action. However, this court and several others have recognized that "a conviction pursuant to a nolo contendere plea gives rise to a variety of collateral consequences in subsequent proceedings." Crofoot v. United States Government Printing Office, 761 F.2d 661, 665 (Fed.Cir.1985); see George v. Black, 732 F.2d 108, 110 (8th Cir.1984) (conviction upon nolo plea basis for civil mental health commitment); Noell v. Bensinger, 586 F.2d 554, 556-57 (5th Cir.1978) (conviction upon nolo plea basis for revocation of Drug Enforcement Administration certificate of registration); Qureshi v. Immigration and Naturalization Service, 519 F.2d 1174, 1175-76 (5th Cir.1975) (conviction upon nolo plea basis for deportation); Sokoloff v. Saxbe, 501 F.2d 571, 574-75 (2d Cir.1974) (conviction upon nolo plea basis for revocation of Drug Enforcement Administration certificate of registration).
 
 
 24
 The Federal Circuit's recent opinion in Crofoot v. United States Government Printing Office, 761 F.2d 661, is particularly relevant. In Crofoot, an employee of the Government Printing Office was discharged for "notoriously disgraceful conduct." Id. at 663. The discharge stemmed from the employee's plea of guilty to charges of false pretenses pursuant to a plea bargain accepted by the district court under the doctrine of North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), which permits a court to accept a knowing and voluntary plea of guilty even though the defendant maintains his innocence, where the trial judge determines that there is a factual basis for the plea. 761 F.2d at 663; cf. Alford, 400 U.S. at 38, 91 S.Ct. at 167. The Federal Circuit held that the employee's Alford plea, and the resulting conviction, could be considered as a basis for the employee's discharge. 761 F.2d at 665.
 
 
 25
 The court observed in so holding that the Alford plea is analogous to a plea of nolo contendere, id., and this analogy has also been recognized by the Supreme Court. 400 U.S. at 37, 91 S.Ct. at 167. In any event, there is no significant difference between a nolo plea and an Alford plea in the context presented herein as to the collateral consequences which may follow its entry; we have already approved the use of a nolo plea where the collateral consequence was more severe than loss of employment. George v. Black, 732 F.2d at 110 (civil mental health commitment); cf. Crofoot, 761 F.2d at 661 n. 1 (arguing that an Alford plea may in some circumstances warrant more severe collateral consequences than a nolo plea). We conclude, therefore, that the district court correctly determined that the NADC findings based on Munnelly's nolo contendere pleas could be relied upon by the Postal Service as a basis for his removal.[5]
 
 
 26
 Munnelly next contends that the district court erred in finding a nexus between the NADC findings and the efficient operation of the Postal Service. The Postal Service may remove Munnelly "only for such cause as will promote the efficiency of the service." 5 U.S.C. Sec. 7513(a). Where an employee is removed for off-duty or off-work premises conduct, section 7513(a) has been read as requiring a nexus between the conduct and the efficiency of the service. See, e.g., Graybill v. United States Postal Service, 782 F.2d at 1573; Crofoot v. United States Government Printing Office, 761 F.2d at 664; Book v. United States Postal Service, 675 F.2d 158, 161 (8th Cir.1982). Munnelly asserts that his activities connected with the Omaha Public Power District were wholly unrelated to his duties and responsibilities as postmaster, and the NADC findings regarding his activities could therefore have no effect on Munnelly's job performance or on the efficient operation of the Omaha Post Office.
 
 
 27
 The district court found that such a nexus was present, and observed:
 
 
 28
 The position of Postmaster is an important one. Postmasters are officials who help manage one of government's most essential services. They are in the public eye and are in a position of trust, a fact evidenced by [Munnelly's] original appointment by the President. They must set an example for the employees below them and responsibly represent the Postal Service with the public. * * * The NADC found that [Munnelly] had committed civil violations involving financial misconduct with public power district funds. These actions call into question [Munnelly's] personal integrity. The amount of money involved was relatively small. However, calculated misuse of public funds in any amount raises doubts about the fitness of a Postmaster to serve.
 
 
 29
 614 F.Supp. at 524-25 (citations omitted).
 
 
 30
 We agree. Munnelly occupied a position of high visibility in the community. More importantly, his position carried with it the high responsibility of handling and accounting for public funds. A postmaster must supervise employees whose duties require that they conduct a high volume of transactions dealing with small sums. The Postal Service may properly insist that its postmasters conduct their personal money matters honestly, so that they in turn may require honesty from the employees they supervise. Public trust in the postmaster and his employees is essential to the functioning of the Postal Service, as is the respect and trust owed the postmaster by those employees under his direction. Munnelly's violation of his public trust as a member of the Omaha Public Power District, his misappropriation of public funds, is directly related to his continued effectiveness as a postmaster.
 
 
 31
 In Book v. United States Postal Service, 675 F.2d 158, we upheld the removal of a postmaster who had misappropriated $22.00 in postal property. Id. at 160-61. We stated, "[i]t was not an abuse of discretion for the agency to determine that Book's demonstrated lack of trustworthiness is directly connected to his job performance and position as postmaster." Id. at 161. Similarly, the Court of Appeals for the District of Columbia has affirmed the dismissal of a postmaster who was convicted of shoplifting $8.00 worth of goods. Yacovone v. Bolger, 645 F.2d 1028, 1030 (D.C.Cir.), cert. denied, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981). The court noted that a legitimate factor in the Postal Service's decision to discharge the postmaster was "the federal interest in having a postmaster whose reputation does not represent an obstacle to the efficiency of the service." Id. at 1036. The district court correctly found that a nexus existed between the NADC findings and the efficiency of the Postal Service.
 
 
 32
 Munnelly also complains that Postal Service and district court reliance on adverse newspaper publicity regarding the NADC findings as an additional basis for removal is illegitimate and violates due process. However, this type of publicity directly affects the trust and confidence the public reposes in the Postal Service. Adverse publicity has been recognized as an appropriate consideration as to the efficiency of the service. See White v. United States Postal Service, 768 F.2d 334, 336 (Fed.Cir.1985) (adverse television and newspaper reports of postmaster convicted of leaving scene of an accident); Yacovone, 645 F.2d at 1032, 1036 (publicity regarding shoplifting conviction). Munnelly's argument fails. We hold that his dismissal was supported by substantial evidence and was not arbitrary or capricious. Ross, 664 F.2d at 192.
 
 III.
 
 33
 Munnelly's final argument is that the Postal Service committed three procedural errors which vitiate its decision to remove him. Specifically, he contends that a clandestine meeting was held by Postal Service officials to discuss and agree upon his removal, that the official who decided to remove him was not higher in authority than the official who initially proposed his removal, and that his administrative appeal was reviewed by an individual who had been improperly designated by the Postmaster General. He argues that these occurrences were violative of the removal and appeals procedures set forth in Part 650 of the Postal Service's Employee and Labor Relations Manual. Munnelly cites and relies on a number of Supreme Court and court of appeals decisions that recognize that an administrative agency must follow its own procedures. E.g., Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).
 
 
 34
 The district court considered and rejected each of Munnelly's claimed errors. It determined that the Postal Service complied with the applicable procedures. 614 F.Supp. at 522-23.
 
 
 35
 We have carefully reviewed Munnelly's contentions, the record and the findings of the district court. We cannot say that the district court's conclusion that there was no prior agreement involving Paul W. Carlin, Regional Postmaster General, to remove Munnelly was clearly erroneous. Nor do we find clear error in its determination that the individual who removed him was higher in authority than the official who proposed his removal. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). And even if we assume that Munnelly is correct in asserting that the Postmaster General improperly designated the Step II reviewing official for his appeal, his conclusory allegation of error does not meet his burden of demonstrating some measure of prejudice from the Postal Service's departure from proper procedures. Mercer v. Department of Health and Human Services, 772 F.2d 856, 859-60 (Fed.Cir.1985); Shaw v. United States Postal Service, 697 F.2d 1078, 1080 (Fed.Cir.1983); Alley v. Veterans Administration Medical Center, 690 F.2d 153, 154 (8th Cir.1982).
 
 
 36
 We affirm the judgment of the district court.
 
 
 37
 McMILLIAN, Circuit Judge, concurring specially.
 
 
 38
 I agree with the analysis set forth in the majority opinion and write separately only to state my reservations about the harshness of the discharge sanction. The applicable standard of review is a narrow one. Our review is limited to determining whether the administrative agency followed the proper procedures in making its decision and whether its decision is supported by substantial evidence and not arbitrary or capricious. I agree that in the present case the United States Postal Service followed the applicable procedures in discharging appellant and that its decision is supported by substantial evidence and was not arbitrary or capricious.
 
 
 39
 I reluctantly join the decision to affirm the judgment of the district court because I believe a sanction short of discharge would have been more appropriate here, especially given appellant's long and outstanding career as postmaster, public service record and many awards. I make no excuses for appellant's misconduct, and I acknowledge that the nature of a sanction is a matter particularly committed to agency discretion. Nonetheless, even though I would have imposed a sanction short of discharge had the decision been mine to make, I cannot say that the agency's decision to discharge was an abuse of discretion. Cf. Book v. United States Postal Service, 675 F.2d 158, 161 n. 5 (8th Cir.1982) (per curiam) (endorsing sanction short of removal as imposed by the agency). Accordingly, I concur specially in the decision to affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable C. Arlen Beam, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 The charges were:
 Count I
 That in January 1982, John P. Munnelly, a public official, and while a member of the Board of Directors of the Omaha Public Power District, used said public office to obtain a financial gain, other than compensation provied [sic] by law, for himself and businesses with which he was associated * * * by claiming and being paid by the Omaha Public Power District for long-distance telephone calls to Omaha, Nebraska, from June 12, to June 24, 1981, which were not for District business;
 Count II
 That from September, 1979 to February 3, 1982, the said John P. Munnelly, a public official, and while a member of the Board of Directors of the Omaha Public Power District, used District funds under his official care and control, other than in accordance with prescribed constitutional, statutory and regulatory procedures, and used such funds, other than compensation provided by law, for personal financial gain * * * by not accounting therefor by the end of the calendar months following the months in which he incurred travel expenses for the District.
 Count III
 That from March 5 during the calendar year 1979, and during the calendar years 1980 and 1981, John P. Munnelly, a public official, and while a member of the Board of Directors of the Omaha Public Power District, used a telephone credit card and number issued to the Omaha Public Power District by the Northwestern Bell Telephone Company, under his official care and control, other than in accordance with prescribed constitutional, statutory and regulatory procedures, and used such credit card and number for personal financial gain * * * by charging and causing the Omaha Public Power District to pay for long-distance telephone calls which were not for District business.
 
 
 [3]
 The provisions cited in the Removal Notice provided:
 
 
 [661]
 3 Standards of Conduct
 Employees must avoid any action, whether or not specifically prohibited by this Code, which might result in or create the appearance of:
 * * *
 c. Impeding Postal Service efficiency or economy.
 * * *
 f. Affecting adversely the confidence of the public in the integrity of the Postal Service.
 
 
 [661]
 5 Other Prohibited Conduct
 * * *
 
 
 [661]
 53 Unacceptable Conduct
 No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service. Conviction of a violation of any criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty by or pursuant to statute.
 
 
 [666]
 2 Behavior and Personal Habits
 Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous and of good character and reputation.
 
 
 [4]
 Munnelly also argues that the Postal Service could not remove him because 5 U.S.C. Sec. 907(a) (1982) preserves his status as a presidential appointee. Section 907(a) addresses the reorganization of executive departments, and provides that "[a] statute enacted * * * or function affected by a reorganization under this chapter, before the effective date of the reorganization, has, except to the extent rescinded * * * by or under authority of law or by the abolition of a function, the same effect as if the reorganization had not been made." Id. Munnelly's contention must fail, however, because his employment as postmaster was continued pursuant to section 8 of the Postal Reorganization Act, rather than under 5 U.S.C. Sec. 907(a). Moreover, this section is inapplicable where the reorganization has the effect of abolishing an executive department. 5 U.S.C. Sec. 905(a)(1). The Postal Reorganization Act had just such an effect. Postal Reorganization Act Sec. 4(a), 84 Stat. at 773-74
 
 
 [5]
 The Postal Service contends that it had additional evidence independently corroborative of the NADC findings, such as expense and travel vouchers which contained overcharges for Munnelly's personal expenses. The district court did not rely on this evidence in determining that the Postal Service's removal of Munnelly was supported by substantial evidence. Nor does Munnelly argue that the quantity of evidence before either the Postal Service or the district court was insufficient to support the district court's affirmation of his discharge. Rather, he takes issue with the quality of the civil findings based on the nolo contendere plea, and we therefore need not consider the additional evidence in the record pointed to by the Postal Service and by Munnelly. We may not reweigh the evidence before the Postal Service, nor substitute our judgment as to where it preponderates. Bonet v. United States Postal Service, 712 F.2d 213, 216 (5th Cir.1983)