995 F.2d 1067
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ethelene P. McGRUDER, Plaintiff-Appellant,
v.
Anthony M. FRANK, Postmaster General, United States Postal
Service, Defendant-Appellee.
 No. 92-3615.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 After a three-day bench trial, the district court ruled that the defendant Postal Service did not intentionally discriminate against plaintiff Ethelene McGruder. Plaintiff now appeals, arguing that the trial court applied the wrong legal standard, and that the court's finding that plaintiff did not suffer unlawful discrimination was clearly erroneous. For the reasons stated, we affirm.
 
 
 2
 * Plaintiff, a black female, became Express Mail Coordinator at the Postal Service's Air Mail Facility at the Dayton Airport in June 1986. She previously had held other supervisory positions with the Postal Service. In July 1989, McGruder took a temporary leave because of emotional stress she was experiencing on the job.
 
 
 3
 While on leave, she received a Letter of Warning, dated August 3, 1989, from her supervisor, Albert Livesay. The letter informed her that she was being warned about her alleged unsatisfactory job performance, including the following deficiencies: filing late reports; erroneous instructions regarding the weekend delivery of express mail; the use of the wrong form when granting scheduling changes; and the recording of false data on five express mail labels. McGruder appealed the letter to Kenneth Hartweck, director of Human Resources. Plaintiff received Hartweck's approval to go to the Express Mail Office at the Dayton Airport to secure documents that allegedly would support her contention that she had not acted improperly. Hartweck called McGruder's replacement, Edward Duell, in advance, to tell him that McGruder would be coming by to search for files.
 
 
 4
 McGruder then went to the Express Mail Office to locate the files. She was unable to find the documents she wanted because they were purged in the normal course of business. However, she did locate some files from 1986 and 1988 that she believed would be useful to her case. McGruder then tried to leave the office with these files. At this point, Duell became concerned because plaintiff was planning to take original files, and he did not believe that she had the appropriate authorization. He tried to reach his immediate supervisor, Livesay, and then Hartweck. However, they were unavailable. Duell did contact Sandra Savoie, Labor Relations Assistant within the Human Resources Department. Her supervisor is Hartweck. Savoie advised Duell that he should not release the original documents, but instead should copy them for McGruder.
 
 
 5
 Based upon Savoie's advice, Duell offered to copy the documents, but plaintiff refused to relinquish them. The situation grew more tense as Duell insisted that she return the files, and McGruder refused to hand them over. Duell was in front of the only exit, and told plaintiff that she would not be allowed to leave with the documents. Plaintiff remained adamant, and tried to leave. Duell then grabbed the documents out of her hands, and started to leave the office.[1] However, before he made it out the door, McGruder began striking him with her umbrella. Other employees separated the two, and Duell emerged from the assault with swelling and bruises. Duell then tried to make copies of the documents, but McGruder left before the copies were made.
 
 
 6
 Hartweck requested that each party to the incident file a report. Ms. Savoie, Hartweck's assistant, took McGruder's statement, and Hartweck interviewed Duell. On October 11, 1989, Hartweck issued a Notice of Proposed Removal to McGruder. Hartweck stated that she was being removed for striking Duell, not for the events giving rise to the August 3, 1989 letter. However, the letter also stated that a previous warning against the plaintiff, dated July 27, 1988, for "failure to follow instructions" and for "unsatisfactory work performance" was considered. The removal notice stated:
 
 
 7
 As a Postal Service Supervisor, you are expected to enforce the rules and regulations of [the] Postal Service. Your conduct in striking another employee is serious enough to warrant removal. Your position as a supervisor further aggravates the severity of your offense.
 
 
 8
 Hartweck also issued a Letter of Warning to Duell for his participation in the October 2, 1989 incident. Hartweck determined that Duell's actions were improper, and that he should have acted in a more professional manner. Duell appealed the letter to the next level of review, Clarence LupPlace, the MSC Manager/Postmaster of the Dayton Post Office. LupPlace reviewed the facts and determined that the Letter of Warning to Duell was not warranted. He noted that Duell tried to resolve the dispute with McGruder by copying the documents, but that McGruder was unwilling to relinquish the materials. LupPlace concluded: "Based on the circumstances you were placed in, I find that you handled yourself in an appropriate manner. Therefore the Letter of Warning ... will be removed from your record."
 
 
 9
 Like Duell, McGruder appealed her dismissal to Clarence LupPlace. On December 1, 1989, LupPlace found that the facts warranted her removal. McGruder was removed effective December 4, 1989. McGruder then appealed to the Merit System Protection Board (MSPB). A hearing was held on March 21, 1990. The ALJ found that the charges against McGruder were proven by a preponderance of the evidence. The ALJ found no evidence of any discrimination, and the MSPB adopted this decision. McGruder then petitioned to the Equal Employment Opportunity Commission (EEOC) from the final decision of the MSPB. The EEOC rejected plaintiff's claim that she was the victim of race or sex discrimination.
 
 
 10
 McGruder then sought review in federal district court. She contended that she was discriminated against on the basis of her race and sex, arguing that other similarly situated employees received less severe punishments.[2] A three-day bench trial was held before Magistrate Judge Merz.[3] The court found for the Postmaster General. The court wrote: "In virtually every case where there was initial evidence of assault of the sort likely or intended to inflict bodily injury, the proposed discipline was removal." Accordingly, the court found that plaintiff was not treated differently on the basis of her sex or race. McGruder then filed this timely appeal.
 
 II
 
 11
 Plaintiff's claim of disparate disciplinary treatment is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). She bears the initial burden of submitting evidence to support a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252 (1981). The plaintiff must present sufficient evidence to raise an inference that the employer's conduct was motivated by gender or race. Once the employee satisfies this burden, the employer must articulate a legitimate, non-discriminatory reason for its actions. The employee then has the opportunity to demonstrate that this proffered reasons is pretextual. McDonnell Douglas, 411 U.S. at 802.
 
 
 12
 The trial court found that the plaintiff satisfied the prima facie test. However, the court ruled that the employer's purported reasons rebutted the prima facie case. The court then concluded that plaintiff failed to show that the employer's rationale was pretextual. Accordingly, judgment was entered for the Post Office. Plaintiff now contends that the court applied the wrong legal standard when examining the employer's purported reason for the discharge.
 
 
 13
 The Postal Service admittedly does not have a precise procedure detailing the steps to be taken when a supervisor assaults a fellow worker. Rather, postal officials have some discretion when determining appropriate penalties. Because of this subjective system, appellant argues that the court should have employed a strict scrutiny standard when analyzing the employer's rationale for discharging her. In support of this position, appellant relies upon Grano v. Department of Development of the City of Columbus, 699 F.2d 836 (6th Cir.1983).
 
 
 14
 Grano and other similar cases do not require a strict scrutiny test for all subjective discipline. Rather, as stated in Grano, the stated reasons only must be "clear and specific." Id. at 837 (citing Burdine, 450 U.S. at 253-56). In Grano, we ruled that the trial court had satisfied its duty by engaging in a "probing analysis of [the employer's] evaluation ... and concluding that the ultimate [employment] decision was not based on plaintiff's sex." Id. at 838. Thus, Grano did not require a strict scrutiny test. Rather, the court only required a thorough analysis of the proffered reason for discharge.
 
 
 15
 Burdine, 450 U.S. 248, a subjective decisionmaking case, also rejects plaintiff's position. In Burdine, the appellate court had ruled that the employer had the "burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff." Burdine, 450 U.S. at 256. The Supreme Court reversed, stating that "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." Ibid.
 
 
 16
 In the present case, the trial court complied with the framework established in Burdine and Grano. Indeed, the court did an exemplary job. The Magistrate Judge conducted an exhaustive analysis of the proffered reason for discharging the plaintiff. The court examined every allegedly similarly situated postal employee, and compared these employees to McGruder. The court concluded that the Postal Service provided legitimate nondiscriminatory reasons for discharge. Accordingly, the court applied the correct legal standard.
 
 III
 
 17
 The ultimate issue in this case is whether the employer was motivated by discriminatory animus. This issue constitutes a question of fact, governed by the clearly erroneous standard. Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently," Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). In the present case, the trial court's ruling was not clearly erroneous.
 
 
 18
 Plaintiff first attacks many of the specific determinations of the trial court. She argues that it was wrong for the trial court to conclude that her supervisory status was a relevant consideration in her discharge. However, testimony established that the Post Office expects more from its supervisors. This principle is well-established. Yacovone v. Bolger, 645 F.2d 1028, 1033 n. 3 (D.C.Cir.), cert. denied, 454 U.S. 844 (1981). McGruder also attacks the failure of the Post Office and the district court to consider her twenty-three years of service. However, there simply is no rule that the Post Office must show leniency for senior employees. Additionally, this issue is not relevant to this appeal. We only are considering whether discrimination occurred, not whether the Post Office has a reasonable discharge policy.
 
 
 19
 McGruder was not treated differently than other similarly situated employees. There is ample evidence in the record that removal was uniformly initiated, without regard to race or sex, for those employees who struck other employees. Appellant offers numerous employees as examples of allegedly similarly situated people who received different treatment. However, her examples are distinguishable. Her lead example is Duell, the person with whom appellant had her altercation. Appellant claims that he is similarly situated, but that he received a different punishment. This is not accurate. Duell did not strike another employee.
 
 
 20
 Regarding her other examples, most are bargaining unit employees, and therefore are governed by a different set of rules. Moreover, almost all of her examples had different supervisors. "Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees." Cooper v. City of North Olmsted, 795 F.2d 1265, 1271 (6th Cir.1986). Furthermore, looking at plaintiff's selected pool of people, removal was the penalty imposed for those who were found to have assaulted another employee. As plaintiff points out, many of these removals were reduced as a result of a grievance, arbitration hearing, or MSPB appeal. However, there can be no inference of employment discrimination by the Post Office when an independent party reduces the penalty.
 
 
 21
 Leonard Gotee is an example of the flaw in appellant's position. Gotee was the appellant's primary example of a similarly situated employee in her brief and at oral argument. Gotee, a white male, was discharged because he struck an employee when he was a supervisor. While his appeal was pending, the Post Office settled the case. Gotee was placed on non-duty status, and eventually reinstated. Gotee, although not a model employee, clearly has a distinguishable situation. First, Gotee did not actually hit someone. Rather, he knocked an unlit cigar out of an employee's mouth. Second, Gotee immediately apologized, whereas McGruder has yet to do so. Third, Gotee is a Vietnam veteran who suffers from post-traumatic stress disorder, and had just begun treatment for this condition. The Post Office decided to show leniency for this reason. Based upon these factors, the district court found that Gotee was not similarly situated. This finding was not clearly erroneous.
 
 
 22
 Every example offered by appellant is similarly distinguishable. It may have been abrupt to fire the plaintiff given her twenty-three years of service. However, our task is limited. We are only reviewing whether the trial court was clearly erroneous when it concluded that plaintiff was not discharged on the basis of sex or race. The court's finding was not clearly erroneous.
 
 
 23
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Duell claims that he grabbed the documents from plaintiff's side. Plaintiff contends that her hands and the documents were behind her, and that Duell reached around her, and rubbed against her breasts. The trial court did not resolve this dispute
 
 
 [2]
 McGruder also alleged handicapped discrimination (stemming from emotional stress problems), and tort claims of assault, battery, and false imprisonment. However, these claims were dismissed prior to trial, and are not the subject of the current appeal
 
 
 [3]
 The parties consented to the Magistrate Judge's hearing the case